MARY ANN SISK, plaintiff in error, v. JOHN H. SMITH, administrator of Absalom H. Sisk, deceased, defendant in error.

### *Error to Pope.*

At the common law, dower is the third part of all the lands, whereof the husband has been seized at any time during the coverture, of such an estate as the children by the wife might by possibility have inherited, and to which by the death of the husband, such wife is entitled for her life. To the consummation of dower, three things are necessary, to wit: marriage, seizin and the death of the husband. Until his death, it is only an interest which attaches to the land by reason of marriage and seizin.

The dower of the wife is not defeated by sale on judgment and execution against the husband, or otherwise than by her own assent, or misconduct.

In this State, dower is barred by the fault or misconduct of the wife; where the marriage was void *ab initio;* and by the acceptance of other provision made for her by the Will of the husband.

Dower, in this State, is a common law, not a statutory right, though recognized and extended by statute beyond the limits of the common law, and this right is not affected by the insolvency of the husband's estate.

Under the fortieth section of the Statute of Wills, the widow of the decedent is entitled to the one third part of his real estate for life; and, also, to one third part of his personal estate forever, which remains after the payment of all just debts and claims against his estate.

PETITION FOR LEAVE TO SELL, &c. John H. Smith, the administrator of Absalom H. Sisk, deceased, filed his application at the October term 1843, of the Pope Circuit Court, for an order to sell the widow's dower and the interest of one of several heirs in certain real estate, of which the said intestate died seized, to pay his debts.

The petition states that upon an application for the sale of the same real estate of intestate, an order had been granted by the Pope Circuit Court at its August term 1842, for the sale thereof to pay debts, and that a sale was made in accordance with the statute; but that the names of Mary Ann Sisk, widow, and also, of Wilson H. Sisk, one of the heirs, were omitted in the papers, and in the order to sell, formerly granted. The petition further states, that it is necessary, in

order to pay all the debts, that the widow's dower and the interest of the said Wilson H. Sisk should be sold to pay the same, and prays an order for that purpose. The heirs of the said intestate, who are all minors, and the said Mary Ann Sisk, his widow, are made parties to the petition. A motion was made to dismiss the application for want of proper parties which was denied; a demurrer was then filed by the said Mary Ann Sisk, which was overruled, and an order made that all the interest in said real estate, which had not been before sold by the petitioner in pursuance of the former order, to wit: the dower of the said Mary Ann, and the interest of the said Wilson H. Sisk, be sold as prayed for.

The errors assigned are, the want of proper parties, the overruling of the demurrer, and granting an order to sell the dower of the plaintiff in error.

*L. Trumbull* and *W. Allen,* for the plaintiff in error:

The interest of all the heirs, except one, had been sold at the previous sale, and the purchaser of their interest, by analogy to proceedings in Chancery when all persons interested in the subject matter of the suit are required to be made parties, should have been notified, and made a party to this proceeding. Cooper's Eq. Pl. 34; R. L. 644.

Dower at common law, (and our statute has not changed it,) is a third part of *all* the lands, whereof the husband was seized of an inheritable estate at any time during the coverture, and to which, by the death of the husband, the wife is entitled for her life. 2 Black. Com. 129; 4 Kent's Com. 35.

The husband alone cannot defeat the wife's dower by any act of alienation or *charge,* but she will hold the same discharged of judgments, &c. 2 Bac. Abr. 387; 4 Kent's Com. 50, 58, 59.

The widow's dower is one third of the real estate independent of debts. *Smiley* v. *Wright,* Ohio Cond. R. 446; *Tabele* v. *Tabele,* 1 Johns. Ch. R. 45; *Adams* v. *Beekman,* 1 Paige, 634; 4 Kent's Com. 41, 42; *Gibson* v. *McCormick,* 10 Gill & Johns. 67.

The wife's interest in the equity of redemption in a mortgage executed by herself and husband, is not sold by a sale of her husband's equity of redemption under an execution against him, and she is entitled to her dower in such equity; and if her dower in an equitable estate would not be barred by a sale under an execution, much more could her dower in a legal estate not be taken to pay simple contract debts, due at her husband's death. 4 Kent's Com. 45.

The contracting of debts by the husband is not one of the ways by which dower may be barred. 2 Bac. Abr. 380; 2 Black. Com. 137; 4 Kent's Com. 50, 51.

When the Act relative to Wills and Testaments was first passed, in 1829, it contained a provision taking away the widow's right of dower in the real estate of her husband when he dies insolvent, and was for that reason returned by the Council of Revision as improper to become a law, whereupon the above provision was stricken out, and the Act passed as it now is. Senate Journal of 1828, p. 283, 285, 286, 388.

*J. C. Conkling*, for the defendant in error:

It is unnecessary to make persons parties to a suit, against whom no decree can be made. The interest of four heirs had been sold at a previous sale, and the object of the present proceeding is, to obtain leave to dispose of the remaining interest in the real estate.

If proper persons are not made defendants, the bill will not be dismissed on demurrer, but stand over to join parties. 2 Madd. Ch. 173; *Lindley*, Ex'r., v. *Cravens*, Adm'x., 2 Blackf. 428; *Grimes* v. *Wilson*, 4 do. 331.

As to the exposition of statutes, see 1 Peter's, Dig. 579; the law is the best expositor of itself—will not resort to extraneous matter. Ibid. 580, § 22. Legislative Journals should not be read here, in exposition of statutes.

By the statute in Missouri, debts must first be paid before dower is assigned. *Stokes* v. *O'Fallon*, Ex'r, 2 Missouri, 35. Pennsylvania has a statute similar to that of Missouri.

The Court is also referred, upon the main point, to the Statute of Wills, §§ 40, 43, 44, 124, 125; R. L. 315, §2,

The Opinion of the Court was delivered by

THOMAS, J. This was a proceeding instituted by John H. Smith, administrator of Absalom Sisk, deceased, to procure an order of the Court below for the sale of the dower of Mary Ann Sisk, the widow and relict of the said Absalom, in his, the said Absalom's lands, for the payment of his debts.

The said widow, denying the legal right of the said administrator to obtain any such order, demurred to his petition, but her demurrer was overruled by the Court, and an order was made for the sale of her, the said widow's, dower. She now brings that order before this Court by writ of error for our revision, and thus, by the assignment of errors, we are called upon to determine whether the claim of the widow to dower, in the lands of her deceased husband, is or is not to be postponed to the payment of his, the said husband's, debts.

In the investigation of this subject, the inquiry necessarily arises as to the nature and origin of the estate in dower, and the several modes known to the law of barring or defeating it. For the successful prosecution of that inquiry, the aid of the common law must be invoked, as the right of dower is given by that law, and among us remains unimpaired by legislative innovation, at least as between the widow and heirs of the decedent. Whether it may, for the benefit of the husband's creditors, be defeated by any means, which for such purpose would have been at the common law unavailable, remains for further consideration.

And first, as to the nature of dower. At the common law, it is the third part of all the lands, whereof the husband has been seized at any time during the coverture, of such an estate as the children by the wife might by possibility have inherited, and to which, by the death of the husband, such wife is entitled for her life. 4 Kent's Com. 69; 2 Bac. Abr. 356, title *Dower;* 2 Black. Com. 129; 1 Thomas' Coke, 443. To the consummation of dower three things are necessary, viz : marriage, seizin, and the death of the husband. 1 Thomas' Coke, 444. But although dower is a title inchoate and not consummate, until the death of the husband, yet it

`Sisk *v.* Smith, adm'r.`

is an interest, which attaches on the land, as soon as there is the concurrence of marriage and seizin.   It may be extinguished in various ways, although the husband alone, according to the common law, cannot defeat it by any act in the nature of alienation, or charge without the assent of the wife given, and proved according to law.   4 Kent's Com. 50.   "Nor can the husband, by his own act, prevent his wife of dower if she attains the age of nine years during the coverture, and therefore, although he aliens his land before, yet if she after arrives at the age of nine years, her dower is now consummate, *ab initio*, and overreaches his alienation, for dower being intended as a provision for his wife and children, whenever she attains such an age as the law adjudges her capable of bearing children, nothing further is required."   2 Bac. Abr. 358.   "And as concerning seizin, it is not necessary that the same should continue during the coverture, for albeit, the husband alieneth the lands or tenements, or extinguisheth the rents, or commons, &c., yet the woman shall be endowed; but it is necessary that the marriage do continue, for if that be dissolved, the dower ceaseth: *ubi nullum matrimonium, ibi nulla dos.*"   1 Thomas' Coke, 475.   And here the distinction between dower and free bench is apparent, the latter being the widow's estate in such lands as her husband died seized of. 2 Black. Com. 129, note 19.   Thus it appears that the dower of the wife is, during the coverture, a title in expectancy to a freehold estate in one third of her husband's lands, her right to the enjoyment of which is entirely contingent upon, and can only be perfected by her husband's death.   That event, therefore, casts upon her no new estate or interest, but simply consummates a pre-existing imperfect one. Consequently, when she, is endowed, she is in from the death of her husband, and like any other tenant of the freehold, she takes upon a recovery whatever is thus annexed to the freehold, whether it be so by folly, mistake or otherwise.   The heir's possession is avoided, as not being rightly acquired, as to the widow's third part, and the rule that subjects the improvements, as well as

the land in possession of the heir, to the claim of dower, seems a natural result of the general principles of the common law, which gave the improvements to the owner of the soil. 2 Bac. Abr. 368; 4 Kent's Com. 66. And when the certainty of the estate belonging to the widow as dower is ascertained by assignment, the estate does not pass by assignment, but the seizin of the heir is defeated *ab initio,* and the dowress is in, in intendment of law, of the seizin of her husband. 4 Kent's Com. 69.

The contract of marriage is as operative to confer upon the wife a separate life estate in the lands of her husband, as would be a contract whereby the husband himself had conveyed to any third person, a life estate, in express terms, in the same lands, and as the tenant for life in such case would hold such estate as an incumbrance upon the fee simple estate of the grantor, beyond his reach or control, so does the wife hold her freehold estate beyond the reach or control of her husband, and discharged from all judgments, leases, mortgages, or other incumbrances, made by her husband after the marriage, because her title being consummated by his death, has relation to the time of the marriage, and to the seizin which her husband then had, both of which are prior to said incumbrances. 1 Thomas' Coke, 443, in note B.; 2 Bac. Abr. 387, title *Dower.* And even if the husband dies indebted to the Crown, yet his wife's dower is by law privileged from any distress therefor, for, as it is quaintly remarked, "the very name *dos* doth import a freedom, and the law doth give her therewith many freedoms." And the reason why tenant in dower shall not be distrained for the debt due to the King in his lifetime, in the lands which she holds in dower, seems to be her prior title by relation. 1 Thomas' Coke, 443; 2 Bac. Abr. 387.

In this country, the doctrine has been recognized by repeated adjudications, that the dower of the wife is not defeated by sale on judgment and execution againt the husband, or otherwise than by her own assent, or misconduct, *Hale* v. *James,* 6 Johns. Ch. R. 258; *Dunham* v. *Osborn,* 1 Paige, 635; *Tabele* v. *Tabele,* 1 Johns. Ch. R. 45; *Smiley* v. *Wright,* 1 Ohio Cond. R. 447.

Sisk *. Smith, adm'r.

Dower at the common law, and by the statutes in aid of it, might be barred or prevented,

1. By divorce *a vinculo malrimonii;*
2. By elopement with an adulterer;
3. By jointure in satisfaction of dower;
4. By the attainder of her husband for treason;
5. By reason of her being an alien;
6. By detaining the title deeds, or evidences of the estate from the heir, until she restores them;
7. By aliening the land assigned for dower;
8. By the levying of a fine, or the suffering of a common recovery of the lands by the husband and wife during the coverture.   1 Thomas' Coke, 475; 2 Black. Com. 138.

Chancellor Kent says, that the last mentioned is the only regular way in the English law of barring the wife's dower, after it has duly attached.   4 Kent's Com. 50.   That "many other ingenious devices have been resorted to in order to avoid the troublesome lien of dower."  Ibid.  "But that in this country, we are happily not very liable to be perplexed by such abstruse questions and absurd rules, as have incumbered the subjects of dower in England to a grievous extent, and that even in those States where the right of dower as at common law exists in full force, the easy mode and familiar practice of barring dower by deed supersedes the necessity of the ingenious devises of English counsel."   Ibid. 52. And he adds, that "the usual mode of barring dower in this country is, by the voluntary act of the wife, not by fine as in England, but by her joining with her husband, in a deed of conveyance of the land containing apt words of grant or release on her part, and acknowledging the same privately apart from her husband in the mode prescribed by the statute laws of the several States."  Ibid. 59.   This mode of barring dower by voluntary relinquishment, is authorized by the statutory laws of this State, Gale's Stat. 151, §§ 12, 14, and is not unlike that where the husband and wife levy a fine, or suffer a common recovery as at the common law, in both of which cases she is examined upon record by the Judges as to her consent, and she having nothing in the lands in her

own right, her joining in such acts, can be to no other purpose, but to bar her dower. 2 Bac. Abr. 382. And it may here be remarked that the only other grounds, specifically prescribed by legislative enactment in this State, for barring. or defeating the wife's dower, are-

1. Divorce for her fault or misconduct;

2. Where the marriage was void from the beginning;

3. The voluntary elopement and commission of adultery by the wife, unless the husband be voluntarily reconciled to her, and permit her to dwell with him;

4. The devise of land, or bequest of personal estate to the wife, unless otherwise expressed in the will, testament, or codicil of the testator; or unless such devise or bequest be voluntarily relinquished by her. Gale's Stat. 254, § 11; Ib. 12; Ib. 696, §§ 39, 40.

Thus much of the nature of dower at common law, and the several causes barring it there, and by express legislative enactment in this State. I will next proceed to inquire whether there is any provision to be found in any statute of this State, which operates to defeat dower, by implication, or otherwise, in addition to those already enumerated. But, as preliminary to that inquiry, I will glance, for a moment at the object of giving dower to the wife, and the estimation in which it is held at the common law. The reason for allowing dower is a very plain and sensible one, viz: to furnish means of sustenance for the wife, and of the nurture and education of the younger children after the death of the husband and father. 2 Black. Com. 130; 4 Kent's do. 35. And looking to this reason, and the interesting purposes of the destination of dower, it is held sacred and has been fortified strongly against invasion. Lord Coke remarks, that "it is commonly said that three things be favored in law, life, liberty and dower," 1 Thomas' Coke, 14; and in practice, this saying seems at the common law to have been recognized as true. For the purpose of protecting and preserving it as the means of affording sustenance to the widow, and nurture and education to the orphan, it has ever been guarded with the most jealous care, and nothing is by that law allowed

to bar it by implication. Is this right, intended for so sacred purposes, made any less secure by any statute of this State, than at the common law? I think not.

I have shown that among the several causes expressly provided by statute of barring dower, sale of the husband's lands for the payment of his debts is not one. It will not be contended that we have any statutory provisions, empowering the husband during the coverture, in any wise to defeat or impair his wife's right of dower, without her assent; nor that it may be defeated by sale on judgment and execution, against the husband, or on foreclosure of a mortgage executed by him alone after the marriage, when such sale in either case is made before the husband's death. And yet we have a statute expressly providing that the goods and chattels, lands and tenements of every person against whom a judgment has been or may be obtained, in any Court of record, either at law or in equity, for any debt, &c., shall be liable to be sold on execution, &c. Gale's Stat. 389, § 1. Here, although the land of the husband is sold, yet the wife's freehold estate therein is not, but the purchaser takes the husband's title, subject to that incumbrance. Then can it be, that the same estate, when the title thereto is perfected by the husband's death, and when alone she can enjoy its fruition, may be sold without the consent of the widow, for the payment of her husband's debts? That the very contingency which brings her into the possession of her estate, operates to defeat it? If such is the law, then is "the word of promise kept to the ear, but broken to the hope;" and the wife is mocked by having her estate in her husband's lands carefully guarded against invasion from his or any other person's acts, so long as she has it only in expectancy; but the moment that the contingency happens, which is to permit her to enter upon and enjoy that estate, tamely yielded up to the rapacious grasp of some one to whom her husband in his lifetime had become indebted. Such a law would indeed protect the shadow, but surrender the substance. It would make the act of the husband posthumously operate to do, what living he was impotent to accomplish. Before we can adjudge our legisla-

ture guilty of so gross an outrage upon common sense and common justice, we must have clear and irrefragible proof, by language capable of no other sensible construction, that they intended it should be so.

Let us then proceed to the examination of the statutory provisions on which the counsel for the defendant in error relies as so far altering the common law, as to subject the widow's dower to the payment of her husband's debts, after his decease. Such, it is contended, is the operation of the fortieth and forty third sections of the Statute of Wills. Gale's Stat. 696-7. Is this so ? The fortieth section, after enacting that "a widow shall be debarred of her right of dower in the estate of her deceased husband, in all cases where any provision shall be made for her" in his will, unless within a certain time she make a written renunciation of such provision, goes on further to provide, that "said letter of renunciation shall be filed in the office of Judge of Probate, and shall operate as a complete bar against any claim which such widow may afterwards set up to any provision, which may have been thus made for her in the will of any such testator; and by thus renouncing all claims to a devise or bequest, as aforesaid, such widow shall thereupon be entitled to the one third part of the real estate of her deceased husband for life, and one third part of the personal estate forever, which shall remain after the payment of all just debts and claims against the estate of such testator." The words "which shall remain," and concluding this section, it is said, have reference to the preceding words relating to the widow's dower in the real estate of her husband, as well as to her right to one third of his personal estate; making her dowable only in the lands remaining after the payment of his debts; but in this view of the subject I do not concur.

As I have already said, dower is in this State a common law, and not a statutory right. We have several statutes recognizing, but not conferring it; although it is extended by our State legislation to at least two cases, in which by the common law it might not be claimed, to wit, in making the widow of an alien dowable of the lands of her husband, Gale's Stat.

698, § 48, and in subjecting the husband's equitable estate to dower.  Ib. § 49.

The first section of the law entitled, "*An Act for the speedy assignment of Dower*," &c., Gale's Stat. 252, in force June 1, 1827, enacts, "that when the heir, or other person, having the next immediate estate of freehold, or other inheritance, shall not within one month next after demand made, assign and set over to the widow of the deceased, to her satisfaction, her dower in and to all lands, tenements and hereditaments, whereof by law she is, or may be dowable, according to the true intendment of law,  then such widow may sue for and recover the same, in the manner hereafter prescribed, against such heir, or other person, having the next immediate estate of freehold, or inheritance, or tenant in possession, or other person or persons claiming right or possession in said estate."

The fifth section of the same Act authorizes the Court, where on petition filed the widow is adjudged to recover dower, to appoint commissioners to allot and set it off to her, and "make return in writing, under their hands and seals to said Court, which if approved by said Court, shall vest in her an estate in the lands and tenements so set off and allotted to her, for and during her natural life."  This Act no where, either expressly or by implication, makes the widow's right to dower contingent upon the payment of her husband's debts, but leaves it precisely as at the common law; and thus it stood, on the first day of July, 1829, when the Statute of Wills, the fortieth and forty third sections of which are under consideration, went into effect.  The question, therefore, now arises, whether the said last mentioned statute in either of its said sections, (for it is not pretended that in any of its other provisions it does,) disturbs that right.  To determine that question resort may properly be had, as I apprehend, to the rule of construing testamentary provisions, relied upon for the purpose of barring or excluding dower, and under its operations, I will proceed to show, that the estate of the wife is as wholly indefeasible, by the creditors of the husband for the payment of his debts, by reason of any thing contained in the Statute of Wills, as it was before its passage.

Sisk *v.* Smith, adm'r.

That rule is expounded in strong and explicit terms, in various authorities. In 2 Bac. Abr. 383, (note *a*,) it is said, that "devises of lands, money, goods, &c., will in no case bar dower, except where there is an express declaration, that they are in lieu or satisfaction of dower, or an account of strong and special circumstances, showing a clear and incontrovertible inference from the will, that the testate meant that she should not take both. In such cases she may elect which she will take; in others, she shall have both." Again, it is said, that "it is well established as a general doctrine, that since dower is a legal right, the intention to exclude that right, by a devise or bequest of something else, must be demonstrated, if not by express words, at least by what appears to the Court to amount to necessary implication." 2 Black. Com. 138, n. 33. And Chancellor Kent remarks, that "to render a testamentary provision operative in lieu of dower, even with the widow's acceptance of it, it must be declared in express terms to be in lieu of dower, or that intention must be deduced by clear and manifest implication from the will, founded on the fact that the claim of dower would be inconsistent with the will, or so repugnant to its dispositions as to disturb and defeat them."

Testing the intention of the legislature, touching the effect to be produced by the concluding words of section forty of the Statute of Wills, upon this "legal right" of the widow, by this rule thus established for determining the alleged intention of the husband by his will, to bar the same "right," and it remains unimpaired. Those words may, without any departure from grammatical accuracy, and by their mere transposition, be paraphrased thus: "such widow shall thereupon be entitled to the one third part of the real estate of her husband for life; and (also) to one third of the personal estate, which shall remain after the payment of all just debts, and claims against the estate of such testator, forever;" and this I conceive to be their true interpretation. It is true, that the language used is susceptible of a different grammatical construction, and yet to construe it otherwise, would be to violate the spirit of the rule referred to, as well as of those general principles of

law, subjecting to the control of the husband, by alienation or otherwise, and to the payment of his debts, without the assent of his wife and irrespective of her interests, all of his personal, but none of his real estate. The intention of the legislature to bar, defeat or diminish the legal estate of the wife, inchoate during the coverture, but consummate by the husband's death, is not herein manifested by express words, or by necessary implication, and therefore I feel constrained to say that they did not so intend. But moreover, in the construction of this section of the statute, we are to look at the object of the legislature in its enactment; thus it will appear that it was intended not to specify in what cases, or of what lands the widow should be dowable, but simply to provide for the renunciation by her of any devise or bequest made to her in the husband's will, without any express provision that the same should not bar dower, and which, without such renunciation, would operate to bar her dower, by the terms of this and the preceding section. It is confined by its own limitations to such cases, and the whole section taken together leaves the interest of the widow, in the lands of the husband precisely as it would have been, if no such devise or bequest had been made.

A different construction of this provision of law, would enable the husband in all cases to divest by his own volition, the estate of his wife, by acts, inoperative during his own lifetime, but effective after his death. He could not, it is true, alien that estate, or so incumber, as directly to bar, or affect it, without her free and voluntary co-operation; but by simply incurring debts exceeding in amount the entire value of his estate, and then making her a devise or bequest of specific property, in his will, he could if he chose to do so, destroy her entire interest in his lands, without the possibility of hindrance by her. By offering her a shadow, whether she grasped at it or rejected it, he could snatch from her, her entire substance. The claim of the creditor upon the testator's property, for the payment of his debt, would be paramount to any title to be derived by her under the will, but not to her title as tenant in dower, at least independently of the provisions of this law. In cases then, where as in the case under

consideration, the entire estate of the testator would not suffice to pay his debts, the effect of accepting or rejecting his proffered bounty, would be the same. To accept would be to bar her dower, while to refuse, would be to entitle her to demand it only after the payment of her husband's debts, and thus forever to exclude her from it, thereby making the tree planted by him but barren in his lifetime, to yield abundantly its bitter fruits after his decease! Could the legislature have intended to make the act of the husband, (powerless in his lifetime,) so potent for mischief after his death? Could they have intended that the mere offer of the testator's bounty, although valueless in itself, and rejected by the widow, should destroy forever her only means of sustenance, for herself and her infant children, while, if no such offer had been made, it would have remained wholly untouched? I opine not.

Thus much of the fortieth section of the Statute of Wills. Very much that has been said of it, applies to the forty third section. That section was intended simply to regulate the descent of the real and personal estate of intestate proprietors, and is expressly made to operate only on such portion thereof as remains after the payment of the intestate's debts, but concludes by "saving to the widow, in all cases, her dower of one third part of the real for life, and the one third part of the personal estate forever." There is nothing in this section, subjecting, either expressly, or by necessary implication, the widow's dower to the payment of her husband's debts; but, on the contrary, it is expressly " saved" to her " in all cases," whether those debts are paid or not. And, indeed, it might be contended that under the broad and sweeping terms of the reservation of her rights in this section, she is entitled to hold even the one third part of the intestate's personal estate forever, by a title paramount to the creditor's claim thereon, were it not that such a construction would be in conflict with the fortieth section, and other provisions of the same statute, and with the general principles of law governing in such cases.

The foregoing views find confirmation in the provisions of section eighty four of this same law, (Gale's Stat. 708,) entitling the widow to receive her portion in the personal

estate of her deceased husband, only in cases of the solvency of such estate; and in the fact, that neither in that nor any other statutory provision, any such restriction is by express terms imposed upon her right to receive and enjoy her dower in his lands. They are also sanctioned by the language of sections ninety eight and ninety nine, (Gale's Stat. 711, 712,) under the authority of which this suit was instituted. Proceedings are thereby contemplated only against the heirs and devisees of the testator or intestate, and no where (as they have been prosecuted in this case,) against his widow; consequently it would seem that the interests of the former only should thereby be affected. But moreover the Court can only order the sale of lands of which the decedent died seized, and in all such lands the widow is always held dowable.

From this review of the various principles of the common law, giving, defining and protecting dower, and of the several statutory enactments on the same subject in this State, I think it must be apparent, that precisely the same estate in the lands of the intestate may be sold by his administrator by order of the Circuit Court, as the sheriff might sell on execution against him in his lifetime; being in both cases, incumbered by the wife's freehold estate therein. But if any doubt still exists as to the intention of the legislature to protect this estate so favored in the law, it must be dispelled by resort to another, and an unerring mode of ascertaining their intention in the premises.

In the construction of statutes, they are said to be their own best expositors, and for the purpose of ascertaining the intention of the legislature, in enacting them, their own provisions, and those of other Acts *in pari materia*, need only, as a general rule, be examined. But under the peculiar system of legislation in this State, a more satisfactory exposition of the true intent and meaning of a statute is sometimes found in matter *aliunde*, than can be deduced from its own provisions. Such is the case, where the Council of Revision return a bill to the House, in which it originated with their objections to its becoming a law, and the legislature re-pass

it, either in its original shape, the objections of the Council
to the contrary notwithstanding; or so amended, as to obviate
those objections. In such case, the intention of the legisla-
ture is manifest, and perpetuated by the record of their pro-
ceedings in the legislative journals. Let the exposition of
this law, then, be found in the application of that rule. On
the 23rd day of January, 1829, the Council returned this
same Act to the Senate, with the following objections, viz:

"The Council of Revision have had under consideration
the above bill, and return the same to the Senate as improper
to become a law of this State; for although the Council highly
approve of the general features of the bill, yet (they) cannot
approve of the principle contained in the fifty first section,
which takes away the widow's right of dower in the real
estate of her husband, where he dies insolvent. The right
of dower in the husband's estate has for ages been consid-
ered so sacred, that this is believed to be the first instance
in our country, where this right has been interfered with.
The bill can be changed so as to suit the views of the Coun-
cil, either by striking out the fifty first section altogether, or
by striking out the word "dower" in two places, and insert-
ing in lieu thereof, "personal estate."

> Ninian Edwards,
> Samuel D. Lockwood,
> William Wilson,
> Theo. W. Smith."

Senate Journal, Session 1828–9, page 283. On the same
day, the said bill was amended by striking out the said fifty
first section, and re-passed through both Houses of the Gene-
ral Assembly, and so became a law. Ibid. 286, 7, 8; House
Journal, 1828–9, page 344.

Could the intention of the legislature be more clearly mani-
fested, touching the effect to be produced by the passage of
this law, upon the right of dower, than it is in these proceed-
ings? The Council say to the legislature: "This bill contains
but one objectionable feature; the operation of one of its pro-
visions, if passed in its present shape, will be to take away
the widow's right of dower, in the real estate of her husband

where he dies insolvent, and therefore it should be amended by striking out that provision." The legislature amend the bill by striking out the objectionable feature, and thus say in effect in reply to the Council: "We concur with you in opinion that it would be improper that this right, which has been held sacred for ages, should be defeated by the husband's creditors, and are unwilling to exhibit in our action, the first instance, where, in the annals of legislation in our country, it has been interfered with; we, therefore, further agreeing with you in opinion, that the section referred to by you would produce such an effect, but that no other provision of this bill does, strike out that section and so re-pass the bill, thus leaving this right as we found it, and wholly unimpaired by our legislation."

It is the opinion of the Court, that the judgment of the Court below was erroneous; it is, therefore, reversed with costs, to be paid by the administrator in the course of administration.

WILSON, C. J. delivered the following separate opinion:

This case presents but one question for our consideration, and that is, as to the widow's dower. By the defendant's counsel it is contended, that under the forty third section of the Act relative to wills and testaments, executors and administrators, &c., that the widow of a man dying intestate is entitled to dower in such lands only, as may be left after the payment of all the debts of her deceased husband. This section regulates the manner in which the real and personal estate of a person, dying intestate, shall descend. It first provides, that "estates both real and personal, of resident or non-resident proprietors, in this State, dying intestate, or whose estate, or any part thereof, shall be deemed and taken as intestate, and after all just debts and claims against such estate shall be paid as aforesaid, shall descend to and be distributed to his or her children in equal parts," But, in case there shall be no children, the statute provides that it shall descend and go to the next of kin and the widow, if there be one, and after enumerating the degrees of kin, and prescribing the interest

they shall have, it concludes by saying, "saving to the widow, in all cases, her dower of one third part of the real estate for life, and the one third part of the personal estate forever."

The adoption of the rule contended for would produce a great change in the law as it has stood for centuries, and one, I think, fraught with great injustice and mischief. To restrict the widow's dower to one third of the land of her husband, after all his debts are paid, would in a vast many cases leave her and her family totally destitute, except the small amount of exclusive property allowed the wife by statute. If the widow's title to dower rested exclusively upon this provision of the statute, without any other foundation or legal provision, the position assumed by the defendant would seem plausible. The language of this section of the statute might bear the construction contended for, if interpreted without reference to the settled policy of the law, and without regard to the justice and equity of the widow's claim. But these considerations ought to control, not a direct and positive enactment, but an implied one merely. It is not pretended, that the right of dower is taken away, or limited by express terms, but that the limitation of the descent of the estate of the deceased to his heirs, after the payment of his debts, should apply also to the widow's dower, and constitute a virtual restriction of her right, and postpones her claim to that of all others. Can it be supposed that the legislature intended by this single expression, and that too when not in connection with the assurance of the widow's dower, nor in an Act professing to be upon the subject of dower, to postpone to the last, and in many instances totally reject the most meritorious claim upon the estate of the deceased? This construction would prostrate all the barriers, which the benign spirit of the law has thrown around this righteous and favored interest. It would, in effect, repeal and make a mockery of that jealous and just provision of the law, which protects the wife, as far as practicable, against the injustice, folly or prodigality of her husband, by securing and perpetuating her title to dower, in all the real estate which her husband may own during coverture, unless she by deed voluntarily renounces her

title thereto. In how many instances would this be a protection to the rights of the wife, if left to the tender mercies of her husband's creditors? Of what avail would be her title to dower in lands sold during coverture, and to which she had never relinquished her title, when their value, or the price for which they sold, would constitute a claim upon the estate paramount to hers, and which must first be settled?

There is another view of this question, which I think decisive of the widow's right of dower, as it existed before this statute. It is not upon this statute, that the widow's title to dower depends. It does not confer her dower, nor is it upon this that she relies. The question, therefore, is not with what portion of her husband's estate this statute endows her, but whether it takes from her a right and interest, which the law had previously conferred upon and secured to her. In England, and in most of the States of the Union, and also in this State, the law has endowed the wife upon the death of her husband with an estate for life, in all the lands and tenements of which he was seized during coverture, provided she has not relinquished her right in the manner prescribed by statute, or her title thereto been barred, or forfeited, by some one of the various modes, or acts, known to the law as producing such a result. In this State the right of dower is extended to half of the estate of the husband, in some cases, and she is also made dowable of all equitable interests which the husband may acquire.

Thus it will be perceived that the widow's right of dower in the lands of her husband is given by the common law, independent of his debts, that it is a legal right sanctioned and enlarged and regulated by statute in a constantly advancing spirit of justice and liberality. Can it, then, have been the intention of the legislature, by this indirect and equivocal language of the forty third section of the Act regulating Wills, to change the whole policy of the law in relation to dower? I think not. Such a design would be in direct opposition to the spirit of legislation upon this subject, and is not warranted by the language of this section. It does

not profess to repeal the existing law, or to limit or restrict the right of dower, except by implication; and that must be regarded as slight, when considered in connection with the whole subject.   Upon legal principles, therefore, this provision of the statute interposes no barrier to the widow's dower in the lands of the husband.   Her title to dower is a legal one, and such an interest the law will never permit to be divested, or defeated by mere implication or presumption.

If further evidence of the intention of the legislature to leave the right of dower unimpaired were required, it could be abundantly demonstrated by a reference to the history of the passage of the law relied on by the defendant.   When that Act first passed the legislature, it contained a section which, in express terms, limited the widow's dower, in the real as well as personal estate of her husband, to one third thereof, after the payment of the debts of the husband.   The Council of Revision returned the bill to the legislature with an objection to this provision, because it produced a change in the law of dower, which was unjust and unprecedented, and ought not, therefore, to become a law.   Upon a reconsideration of the bill, the legislature concurred in opinion with the council, and struck out this objectionable provision, and then passed the bill as it now stands.   This circumstance of itself clearly demonstrates the intention of the legislature to leave the widow's right to dower unimpaired.   And when considered in connection with the liberal spirit of legislation upon this subject, which has been constantly on the advance for years, and no where more so than in this State, I think it can leave no doubt as to the intention of the legislature, and as little doubt can be felt as to the operation of the provision, when tested by the legal rules of interpretation.   It is doubtful and equivocal in its language, and it is only by implication that it can be claimed to divest the widow's legal, equitable and favored interest, to allow which, would be alike in violation of justice and the fundamental principles of the law. I think, therefore, that the judgment of the Court below should be reversed, with costs against the defendant in his fiduciary character.

SCATES, J. dissenting:

I differ with the Court, and place my dissent upon the construction of the forty third section of the Statute of Wills, (R. L. 625,) and the spirit of other sections of the same Act, and other Acts of the legislature, subjecting all real and personal property in this State to the payment of debts, except certain portions specially exempted from execution, and a certain portion in ˙cases of intestacy, given to the widow as an exclusive estate, not to be subject to the payment of debts. The fortieth section provides, that a provision for the wife made by will shall bar the dower, unless she renounce it within six months. The forty third section fixing the mode of descent of estates in this State provides, that estates real, "after all just debts and claims against such estates shall be paid," shall descend, as therein provided, to the widow and heirs in certain proportions according to the fact, whether there be any children, or only next of kin. If there be no child, the widow takes one half the real estate forever, and the whole of the personal estate, as her exclusive estate, subject to her entire and absolute control and disposition. The section concludes with, "saving to the widow, in all cases, her dower of one third part of the real for life, and one third part of the personal estate forever." The forty fourth section gives the widow certain property, and declares that it "shall in no case be subject to the payment of the debts of the deceased." These provisions, it seems to my mind, most clearly show, that the debts were first to be paid, before the widow's dower in the general mass of the property can be set apart and estimated, and that it will be only of the remainder. It is expressly subject to the payment of debts in Missouri. 2 Missouri R. 35.

The spirit of American legislation is to subject all property to debts, and so foster the commercial enterprize of the people, by facilities in exchanging all kinds of property, and making all available to meet their engagements. This policy is not new. I should hardly resort to the journals of the legislature showing their intention in relation to another clause thus subjecting dower to pay debts, for the purpose of

Sisk *v.* Smith, adm'r.

ascertaining the sense of this to be the contrary; which was, as the bill stood with the section, (afterwards stricke nout,) a perfect provision to that effect. It shows more clearly to me, that the Council of Revision overlooked this section, which effected the same thing, than that the legislature did not intend so to provide. The section stricken out shows, that they did so intend, and the Council having overlooked this section, the legislature accomplished their policy, as contained in the section stricken out. The whole body of the common law as to what dower is, embodied in the Opinion with a commentary, throws no light upon what the legislature intended to do with it in this State. If the section, which was stricken out upon the objections of the Council, had remained in the bill, could this section now be read as restoring the dower, and removing the liability to pay debts? This forty third section was a harmonious part of the original bill, clearly declaring dower subject to debts. If it would have been entitled to that reading with the other section in it, how can that meaning be changed by striking out another section, and without altering the phraseology of this? It is very clear from the journals, that the Council of Revision did intend that such a provision should not be made; but it is equally clear, that the legislature intended to make it, by inserting the other section. It is true they struck it out on the objection of the Council; but it being the only section objected to on that account, it does not follow that they intended to change their policy, while they left in, another section, liable to the same interpretation in harmony with the one stricken out.

*Judgment reversed.*