## R. H. Gould, adm'r. *v.* Viola Luckett.

1. Dower—judgment against husband during coverture, no bar.—A judgment rendered against the husband during the coverture does not defeat the widow's right of dower, even though the land be wholly insufficient to satisfy the judgment.

2. Administrator can not resist widow's application for dower, on the ground of paramount claim of creditor.—On an application by the widow to have dower assigned her, the inquiry is limited to the questions of marriage, seizin of the husband, and non-alienation by him.

Appeal from the probate court of Madison county. Cunningham, J.

The opinion of the court distinctly discloses the facts of this case.

*John Handy*, for appellant.

The facts presented by the record are, that a judgment was rendered against William R. Luckett, in his lifetime, in the circuit court of Madison county, in 1859, at which time Luckett was seized of certain lands in said county. At the time the judgment was rendered Mrs. Viola Luckett was the wife of said Wm. R. Luckett. The lands were not sold under the judgment, in the lifetime of the husband. After his death his widow claimed dower in the lands, which was assigned her. The estate of Luckett is insolvent. The judgment of the court assigning her dower is the error complained of.

The question presented by the record is this: is the widow entitled to dower in the lands of her husband, to which the lien of a judgment against the husband had attached during his lifetime, the lands being necessary to pay the debt.

We affirm the negative. We are aware that under the law of dower, as it existed in Mississippi prior to the Code of 1857, a different decision was made in the

case of Fleeson v. Nicholson, Walker's Reports. It does not appear from the report of that case whether the judgment was rendered before or after the marriage. If before the marriage, then that decision is utterly at war with the decisions of all other courts on the same question, as we shall presently see. If the judgment was rendered *after* the marriage, then the decision was clearly right, under the law of dower, as that law then stood in Mississippi. But however right at the time it was made, an entirely different rule would prevail under the statute of 1857.

Now, by the common law, the widow was endowable of all the lands of which her husband was " seized at any time during the coverture." This right became inchoate on the marriage, but perfect the very moment she became discovert. In this state, dower, as at common law, does not exist. It is here the creature of statute, and is made to consist of one-third of the lands of which the husband " died seized," or which he had before conveyed otherwise than in good faith, and for a valuable consideration." This difference between the old and the present law of dower in this state, is vitally important in the consideration of the present case.

It is conceded that in those states of the Union where dower remains as at common law, a judgment rendered after the marriage, and executed either before or after the death of the husband, by sale of his lands, would be inoperative to defeat the wife's dower, because, the judgment being rendered after the marriage, the husband is seized during the coverture. But it has been held with unvarying uniformity, both in England and in all the American States where dower, as at common law, remains, that where, prior to the marriage, a judgment has been obtained against the husband, *dum solus*, and subsequent to the marriage, the husband's lands are sold in satisfaction of the judgment, the right

of dower in such lands is thereby defeated. Scribner, 572, and numerous cases there referred to in the note; 2 Cart. (Ind.) 58. In the well considered case of Brown v. Williams, 31 Me. 403, which fully establishes this doctrine, it was extended to a case where land was taken in attachment prior to the marriage, but there was no *judgment* until after the marriage; and in the case of Queen Ann's County v. Pratt, 10 Md. 5 (to which the attention of the court is particularly invited), it was held that this rule applied, notwithstanding the arrest of the husband on a *capias ad satisfaciendum* issued before the marriage. The principle upon which the cases proceed is, that, as " the liens existed at the time of the marriage, the widow must take her dower subject to them." Robbins v. Robbins, 8 Blackf. 174. The judgment rendered before the marriage, although it does not affect the actual seizin of the husband until a sale is made under it, yet, when it is so made, will, by relation, operate as a divestiture of the husband, seized from the date of the judgment against him, so that, though possessed of the land, he is not, in law, seized during the coverture. 10 Md., before cited, 8 Blackf. 174. Until the sale, the dower may be assigned her, but she takes it subject to the lien; it is good against the heir and every other person, except the judgment creditor. By enforcing his lien he may dispossess the widow. Ib. If the sale raise more than will satisfy the lien, she is entitled to dower in the surplus. 2 Cart. 58. If she pay off the judgment, in order to save her dower, she would have an equitable claim to be put in the place of the creditor, with a right to collect back out of her husband's estate, had at the time of the marriage. 3 Paige, 117. In Green v. Causey, 10 Ga. 435, the widow's dower was assigned her, although the lien of a judgment against her husband rested upon the land prior to the marriage, the land having never been sold up to the time of the as-

signment. But it is upon this fact of no sale that the decision rests, and the court say, whether the widow takes her dower subject to the incumbrance of the judgment is "a question not made in the record, and upon which we express no opinion." By examination it will be found that in that state the act of 1842 provided that all conveyances of real estate made by a sheriff, "in the lifetime of her husband," should bar dower, and the words quoted, may have influenced the court. Cobb's New Dig. 179.

We assume it then as clear, from authority, that if the judgment be rendered against the husband prior to the marriage, and his lands are sold under it, the judgment and sale bar the widow's dower. This being so with regard to dower at common law, it must follow irresistably, upon the same principles, that under our statute which limits the right of dower to the lands of which the husband died seized, a judgment rendered after the marriage and followed by a sale of the husband's land, would also defeat her claim to dower. By the common law, dower originates with the concurrence of marriage and seizen; the right to it then becomes inchoate, and it is beyond the power of the husband to defeat it by his single act, whether it be one of alienation or the creation of a charge. The husband is seized during the coverture, and the death of the husband vests her absolutely with the right to dower. But in Mississippi at this day, there is no such thing as an inchoate right of dower; there cannot be. The power of disposing of his lands, in good faith, and for a valuable consideration, abides in the husband absolutely, during his life. Anterior to his death, she has no right whatever; but it begins with his dying seized. It is no more inchoate during the life of the husband than is the right of the heir to the real estate of the father during the same time. It is clearly immaterial then under our statute whether the judgment be rendered prior or

subsequent to the marriage, seeing that it is a lien upon the land in both cases prior to the accrual to the wife of any right of dower. Her right is dependent upon his as existing, not at the inception of, and during the coverture (as in the case of dower at common law,) but upon his existing *at the* time of his death. "The wife's right of dower is an emanation from the ownership of her husband, and subject to all its qualifications." Wilson v. Davidson, 2 Rob. (Va.) 385. During Luckett's life, after the rendition of the judgment against him, his ownership was qualified by the lien of the judgment. If the land had been sold under it, during his lifetime, can it be possible that any one would say that he died seized of the land? Or that the sale did not cut off all hope of dower, should his wife survive him? Can the accidental circumstance that he happened to die before the sale, make her case any better. If so, it might result that the kindness of a creditor in holding up his execution, would result in diminishing the value or extent of the estate upon which the judgment is a lien. If the seizin of the husband at his death is encumbered by the lien, the dower is also encumbered by it. In Walton v. Hargroves, 42 Miss. 26, Judge Peyton says: "The general lien of a judgment does not, *per se,* constitute a property or right in the land itself. It only confers a right to levy on the same to the exclusion of other adverse interests, subsequent to the judgment, and when the levy is made on the same, the title of the creditor relates back to the time of the judgment, so as to cut out intermediate incumbrances. The judgment creditor takes in execution all that belongs to his debtor, and nothing more. He stands in the place of his debtor when he purchases under his judgment." And Chancellor Kent says : " The wife's dower is liable to be defeated by every subsisting claim or incumbrance in law or equity, existing before the inception of the title, and which would have defeated the

husband's seizen." 4 Kent. Com. 51. Now, is it not clear that under the dower act of 1857, the claim of Mrs. Luckett was subsequent to the judgment; she could have no interest until the death of her husband, for we have seen that marriage is not now the inception of the right of the wife to dower, but that the right has no existence at all until his death. The judgment creditor takes in execution all that belonged to Luckett in his lifetime, and stands in Luckett's place when he purchases under the judgment. The power of disposing of the property free of dower, belonged to Luckett in his lifetime, and the purchaser, under the execution, stands in his place, and holds it free of dower. The sheriff by the sale conveys all that Luckett could have conveyed in his lifetime; for, as he could in his lifetime have conveyed the land to the judgment creditor, to satisfy the debt, so the charge upon the land in shape of the judgment and execution enables the sheriff to sell and convey as large, and as unincumbered an interest as the debtor could have done by his own deed. The only reason assigned by the court in Fleesan v. Nicholson, (Walker's R.) for holding that the sale under the execution did not defeat the dower, is that if allowed, the husband might, by suffering a judgment to go against him, do what he could not do by his own deed, without the concurrence of the wife, reasoning which has no application to the law of dower in Mississippi, at the present day.

The analogies of the law support this view. Under the old law of dower, a contract by the husband to sell lands, is held superior to the widow's right of dower. Cro. Cas. 568 ; 4 Kent, 50 ; Park on Dower, 106.

So in free bench, in copyhold estates; it exists in all copyhold estates of which the husband dies seized. 2 Atk. 525; Cowp. 32; Whart. Law Lex. title "Copyholds." These authorities show that this estate is

subject to sale under liens acquired against the husband after the marriage, so as to defeat dower.

So in Scotland, the widow's terce, (or dower,) extends only to the lands of which the husband "died seized." The husband may alienate or incumber the land during the marriage, and so defeat the drawer. 1 Bell's Com. 57, *et seq.*

In most of the American states, where dower has been changed from a portion of the lands of which the husband was seized at any time during the coverture, to such as he died seized of, it has been held that a judgment rendered after the marriage, and a sale of the husband's lands under it, would defeat the widow's dower.

In Michigan, in the case of Johnson v. Van Dyke, 6 McLean, (C. C. R.) 422, the court held that in such case the judgment and sale would have defeated dower, but for a saving clause in the statute of that state, changing dower from what it was at common law to one-third of the land of which the husband seized died, which clause provided that the statute should not apply to any case of marriage before the passage of the act, the case before the court being one of that character.

In Pennsylvania, in Reed v. Morrison, 12 Serg. & Rawle. 18, 21, the court held, that under a similar statute, "on a mortgage after coverture, not executed by the wife, and by a judicial sale for the payment of the husband's debts, her dower would be defeated." To same effect, see Stewart v. Stewart, 5 Conn. 317; Stedman v. Fortune, ib. 462.

In Vermont, under a statute like ours of 1857, the husband's *jus disponendi* is held to be as absolute as though he were not married, except that he cannot make a merely voluntary conveyance for the purpose of defeating dower. Scribner, 590, and authorities cited.

In Georgia, by act of 1826, (Cobb's New Dig. 171,) the widow's dower is in land of which the husband "died seized and possessed," and by it his conveyance is

made effectual, without the consent of the wife to convey the lands sold, free of dower, except as to such lands as the husband obtained by the marriage. It was held, that the simple bond of the husband, made after the marriage, binding him to convey on payment of the purchase money, would bar the wife's dower, although the husband retained the legal title to the land in himself to the time of his death. 28 Ga. 107.

I admit that the decisions in North Carolina, and in Tennessee, upon a statute very much like ours, would seem to conflict with these views. The earlier decisions, in North Carolina, were in accordance with them. In Winstead v. Winstead, 1 Hayw. 243, and in Hodges v. McCabe, 3 Hawks, 78, it was held, under the act of 1784, giving dower in lands of which the husband " died seized or possessed," that where a judgment was rendered against the husband, after the marriage, and a levy on his lands under it was made in his lifetime, a sale under the levy, whether made in the husband's lifetime or not, would defeat the dower of the wife. (In that state, the lien begins with the levy.) But, in Frost v. Etheridge, 1 Dev. 30, the same court held, that if the husband die before the *teste* of the writ of execution, the widow was dowable. The subsequent case of Davidson v. Frew, 3 Dev. 3, decides that if both levy and sale be prior to the husband's death, dower is defeated under the act of 1784, although the judgment be rendered after the marriage. ` The Tennessee decisions under the same statute derived from her parent state, follow the case above cited, from 1 and 3 Dev. See 6 Humph. 423.

Now we remark, upon all these authorities, that, with the exception of those in Tennessee and North Carolina, they all hold that under statutes like ours, the judgment and sale, after the marriage, whether in the husband's lifetime or not, would defeat the wife's dower. Upon the decisions in these two states, I remark also,

that the statute of 1784, is very materially different from that of 1857 in this state,—in this, that it is in the disjunctive—the widow, by it, is endowed of the lands of which her husband "died seized *or* possessed," while, in this state, the husband must die "seized *and* possessed."

Again, in N. C., the decisions have been vascillating on the subject. In Frost v. Etheridge, there was a divided court, (two against one judge) and judge Hall dissenting. The Tennessee case is not well reasoned; the judge seemed content to adopt the decision in the parent state.

Now, in this state, the question is not the same as in North Carolina and Tennessee. Here, it is the judgment that binds the lands as a lien upon it, but in those states the judgment has no such effect; here they are declared to be "a lien upon, and bind all the property of the defendant," &c. Here this lien arises by force of a judicial decree or judgment, the most solemn act of the law of which all are chargeable with notice, but the levy is a merely ministerial act, an act *in pais*, and although the law makes it a lien upon property, it is, in the language of Judge Taylor, who delivered the opinion of the court in Frost v. Etheridge, "an act of very little consequence or legal operation."

But, moreover, Frost against Etheridge, upon a critical examination, will not be found against us, except in the *dicta* of the judge who delivered the opinion of the court. The execution in that case had not been levied or the land in the lifetime of the husband, so as to create a lien by levy. (In this I may be mistaken, as I write from memory of the case only ; the case not now being before me.) It had only received its *teste* in the husband's lifetime, the only effect of which, as Judge Taylor said, was "to give the creditor a contingent priority to raise the money from defendant's property levied on, and to invalidate any transfers made by the debtor after the

*teste.* In all the other North Carolina cases cited, the dower was held to be barred. But a judgment lien in Mississippi confers a right to levy to the exclusion of other adverse interests subsequent to the judgment, and, when made, it relates back to the time of the judgment, so as to cut out intermediate incumbrances. The test is not, as put by judge Taylor, whether the sheriff, after the levy, has the power to dispossess the defendant in execution; he clearly has not; the question, however, is not one of seizin in fact, but of seizin in law; it is seizin in law, not in fact, that is necessary to constitute dower; this seizin in law may be destroyed by operation of legal rules, although seizin in deed may, for a time, continue in the party disseized in law. The judgment, levy and sale, in the lifetime of the husband, bar the claim of the widow for dower, as is universally admitted, yet all these together do not dispossess the defendant of the land in point of fact. They only confer on the purchaser the legal seizin which enables him to eject the defendant by suit at law. The sale is not necessary to give any additional rights, but only to effectuate the rights the judgment creditor already has; and it must therefore be quite unimportant whether the land be sold during the life of the judgment debtor or not. He may die before it is possible to sell the land after the judgment is rendered; or the act of the defendant himself in prosecuting a writ of supersedeas, or obtaining an injunction, or in some other manner, stopping the execution of the judgment during the lifetime of the defendant, may make it impossible to have sold in his lifetime. Shall such matters be held to impair the force and legal effect of the judgment? To make it worth less to the creditor than otherwise it would have been? The justice, common reason, and the analogies of the law, all forbid such a theory. The vendor's lien is superior to the claim of dower, and this, whether the sale in his favor be made

before or after the death of the husband. 1 Scribn. 532, Cook v. Bailey, adm'r, 42 Miss. 81, was such a case.

Dower is barred by sale of land for taxes, after death of husband. 8 Ohio St. 432.

The true question in the case is, when does the wife's right of dower attach? When does it have its inception? It is not clear that, except as against conveyances, made *mala fide*, and without valuable consideration, she has no right of dower until her husband dies seized; it is not marriage and seizin that constitute the inchoate right of dower, at this day, in Mississippi, but the husband's dying seized. The power of alienation continues as long as he lives, and therefore no right of the wife to dower can attach so long as the husband lives. Now Kent say, (p. 50, 4 vol.,) that dower is subordinate to every lien or incumbrance existing before the inception of the right to dower. It is upon this ground that a sale under a judgment against the husband, before the marriage, is held superior to the wife's common law claim of dower; the marriage is the inception of her title in such case. The husband, after such inception, has no power by alienation or otherwise, by his own act to defeat his wife's dower; but under the present law, he may sell at pleasure all his lands during his life, because no right of dower attaches to it until his death.

Scribner, (p. 578,) says: It sometimes happens, owing to the nature of an estate, that it is exempt for a time from the incident of dower, and while in this position, he may dispose of it at pleasure, and he thereby intercepts the title of dower. "Thus," says he, "if the husband have an estate in lands, which, by reason of any precedent or interposed estate of freehold existing in another person, is not subject to an incipient title of dower, an alienation of that estate will prevent the wife from ever becoming dowable thereof, although the particular estate determine, or is consolidated in the lifetime of the husband." In the case now in hand, the land was

not subject to any "incipient title" of dower, and the judgment lien binds it, so as to sell the land free from all claim of dower, as much so as the husband, in his lifetime, could have done.

If the rendition of the judgment against the husband, before the marriage, creates such a lien upon the lands as that after the marriage, a sale thereof to satisfy the judgment would defeat dower, as clearly it would under the common law, we cannot see how the rendition of a judgment, after the marriage, would not have the same effect, seeing that in the latter, as well as in the former case, the lien exists before the inception of any dower right in the wife.

The contrary view would lead into difficulties and dilemma. John Doe obtains a judgment against Richard Roe, for money. Doe dies, leaving a widow, and before his land is sold under the judgment. After the rendition of the judgment, Roe has sold his land, and conveyed the same to Robert Fenn. The alienation of the husband by deed to Fenn would defeat the dower, because, by reason of it, the husband was not seized at his death; the sale and purchase under the judgment would convey the estate to the purchaser, and the grantee, Fenn, would acquire nothing by his deed, and the purchaser would acquire the full title discharged of dower, not by virtue of the force of his judgment lien, according to the theory of the adverse counsel, but because of the alienation; in other words, the inception of the right of dower as against the alienee never took place, because the husband did not die seized; yet, if no alienation had taken place, the operative force of the judgment would not extend to defeat the dower when the land should be sold under it.

Dower, even at common law, does not always result from marriage and the seizin of the husband. We have seen that it yields to the vendor's lien. It is barred by forfeiture for crime, in countries where forfeiture of

estates for crime are imposed by law. It has been held in some of the states, that it is intercepted by the mechanic's lien. It is barred by the adultery of the wife; by the exercise of the right of eminent domain; by condemnation to public uses, even of lands appropriated by railroad companies, under authority of law; in partnership lands it yields to the rights of general creditors without specific liens, including any general balance that may be found due the surviving partner on an adjustment of the partnership affairs. The bankruptcy of the husband, under the act of 1867, bars it, and it has been held that the same would have been the case under the act of congress of 1841, but for a clause therein expressly reserving dower. Am. Law Times, vol. 3, p. 310. It does not exist according to Coke (Litt.), where the feoffment is made on condition, and the condition is broken by the feoffee; nor where lands are given and taken in exchange, does the right attach to both the lands given and those taken; but she may elect out of which lands to take her dower.

Nor is it true that dower is favored in law at the present day. The declamation on that subject, which has crept into some decisions and text books, and into arguments of counsel, is without foundation in reason at the present day. Dower is not worthy to be classed with "life or liberty" at the present day, if ever it was. At that period of the English law, when dower originated, it was worthy of great praise, as a triumph of the principles of natural justice over the rigorous rules of the feudal system, by which estates were inalienable *inter vivos* or devisable by will, but descended, in every instance, to the heir, by inexorable law, to the exclusion of the widow and the creditors also, although the estate may have originally belonged to the wife, before marriage. Her claims to support were, on the principles of natural justice and humanity, recognized by the great charter, which took part of the real estate

from the heir, and bestowed upon the widow the right to its enjoyment during her natural life. The reason upon which dower was originally founded, ceased to exist in England after estates there became alienable by deed and devisable by will; and although the right was continued for years in England, there has been a growing disposition to disfavor dower, and to free the estates of persons from an incumbrance which has embarrassed it as a means of converting it readily into purposes of trade and commerce. This feeling finally culminated in the act of 3 & 4, Wm. IV., called the dower act, by which it rests with the husband in his lifetime to say whether the widow after his death shall share any part of her husband's estate or not, and all debts or incumbrances of her husband are made effectual against the widow's dower. Whart. Law Lex. title "Dower."

Some of the states of the Union have adopted a similar policy; and in this state, in the very statutes under consideration, has followed a similar policy by making estates alienable by the sole act of the husband, selling the land in good faith. The same line of policy is indicated by our legislation enabling her to hold to her separate use the real estate owned by her at her marriage, and to acquire more in her separate right, and diminishing her dower in the estate of her husband in proportion to that owned by her in her separate capacity. She is also protected in the enjoyment, for herself and children, of the homestead, against the claims of all creditors. In this view of the law, certainly neither justice, sound policy, or the reason of the law demands that a construction should be given to this act of 1857, unfavorable to the rights of judgment creditors of the husband, notwithstanding the favorable rule to widows which once existed, and which has called forth such high praise from opposing counsel. "*Lex plus laudatum, quando ratione probatem.*"

The record in this cause shows that sale has taken

place under the judgment at the time the dower in this case was assigned. We frankly confess that our mind favors the view that, until the sale has taken place under the judgment, the widow may have her dower assigned her, and hold it subject to the right of the judgment creditor to divest her of it, by the enforcement of his lien. This court may also take the view that the administrator could not set up in this case the rights of the judgment creditor. We think he could, however. The law requires the administrator to be made a party to the proceedings in dower; this must be that there should be before the court some one person charged with the interest of all the creditors, and whose duty it is to make the estate pay as much as possible, by seeing to it that every property liable to the creditor's debts shall be devoted thereto. Otherwise, why make him a party. But if the court should decide against us for either of these reasons just mentioned, we earnestly invoke a decision on the main point in the cause, which, if not now decided, will be left open for future decision, in ejectment brought by the purchaser under the sale made since the assignment of dower. It would save trouble and costs to the parties if this is done. And if the court should be of opinion that the sale, as well as the judgment, should be in the husband's lifetime, (which, we think, it cannot be,) would the fact that the execution of the judgment in the lifetime of the husband, by sale of the land, was prevented by the act of the party defendant in suing out an injunction, (which, though not disclosed by this record, is the fact in this case,) modify the rule in such case ? Some information from the court on these points would be desirable, so as to save litigation.

*J. A. P. Campbell*, for appellee.

The widow's claim to dower was resisted by the administrator of her deceased husband, not on the ground

of want of concurrence of all of the three legal requisites of dower, but because of the assumed paramount rights of a judgment creditor of the husband, whose judgment lien, the administrator, in a spirit of generosity to the creditor, at the expense of the widow, undertook to assert and maintain, as a bar to her claim of dower.

I. It was not admissible for the administrator to make this defense. It was not his business. He should have confined his efforts to his legitimate duties, and left the judgment creditor to protect his rights, when assailed, in a tribunal where he could be heard. The probate court could not adjudicate this question, and even consent of parties could not confer on it jurisdiction to render a valid decree in this matter. As against the representatives of the husband, upon proof of marriage, seisin and death of the husband, the decree for dower follows, leaving the question of the alleged paramount claims of others to the land to be decided in a contest directly between the widow and such claimant, in the tribunal appropriate to such contests. These are such oft repeated and well established truisms as to render citation of any of the multitudinous authorities unnecessary in this court.

II. If the question sought to be raised was properly involved, its solution must be in favor of the widow.

It is clear that at common law the widow was entitled to dower in all lands of which the husband was solely seized at any time during the coverture, and it has been held in Mississippi that she is not barred of her dower by a sale of her husband's land, under execution against him. Fleeson v. Nicholson, Walk. Rep. 247. This, I think, is settled law, sustained by numerous authorities.

The question is, does our statute, art. 162, p. 467, Rev. Code, change this rule ? By that the widow is entitled to be endowed of all lands, etc., of which her

husband died seized and possessed, or which he had before conveyed otherwise than in good faith and for a valuable consideration.

To defeat the widow the husband must have conveyed. A sale and conveyance, *in invitam*, is not sufficient. The law requires his conveyance, for a valuable consideration, in order to protect the wife against the consequence of improvidence or misfortune, resulting in an execution sale; and "valuable consideration" here means fair, adequate, in order to secure a substitution for the land sold by the husband, of a *quid pro quo* in the shape of other lands, of which she may be endowed, or personalty, in which she may share as a distributee. The husband must sell and receive in exchange for the land some equivalent, her chance of sharing which the law requires as an equivalent for the loss of dower in the land. Jiggitts v. Jiggitts, 40 Miss.

The wife is not to be defrauded of her inchoate right to dower in all land held beneficially by her husband during the coverture. Her right cannot be defeated by conveyances made to defeat them, nor by fictitious, nor nominal, nor unfair considerations, nor by judgments and execution sales, whether the result of contrivance and collusion between the husband and his creditors, in order to do indirectly what is prohibited directly, i. e., to defeat dower, or the result of improvidence, miscalculation or misfortune. Sanction the doctrine that dower is barred by judgments against the husband, and the door is opened wide to defeat the spirit of protection to the widow, which inspires the law of dower, either by simulated debts, or by real debts incurred in reckless extravagance and riotous debauchery, ripened into judgments and followed by execution sales. A thriftless or depraved and faithless husband may laugh to scorn the puny efforts of the statute to guard the wife's right in the husband's realty, for he may incur heavy liabilities in dissipation, debauchery and infidel-

ity to her, and the fortunate creditor (favored above the wife) may inflict on the neglected, deserted and sorrowing widow, an injury the husband could not directly do, by obtaining judgment and execution. This cannot be. When the wife loses all claim of dower in land sold by the husband, she must receive an equivalent, in the shape of a chance for endowment of other lands, or an enlarged distributive share in personalty obtained for the land.

It should be remembered that our statute is a restrictive statute, and should be construed strictly in favor of the widow, whose claim of dower is one of the three things favored by the common law, as triumphantly affirmed by Coke, and whose protection has been none the less an object of solicitude in our law.

III. It is true that the wife's dower is derivative from the husband, and anything that defeats the husband's title to the land and destroys his original seizin, defeats dower. As the wife claims under the husband, a title paramount to his divests the husband of all seizin, and leaves it as though the husband never had seizin. But if the husband was, at any time during the coverture, beneficially seized of land, the widow is entitled to dower, unless (under our statute) her husband had conveyed it in good faith and for valuable consideration.

A levy under execution on a judgment, which is a lien on land, is not a divestiture of the seizin of the husband, so as to defeat dower, even if a sale would be. Rutherford v. Read, 6 Humph. 423; Combs v. Young, 4 Yerg. 218; Overton v. Perkins, 10 ib. 328.

SIMRALL, J.:

Two points were made at the argument. Whether the judgments recovered against the husband during coverture defeated the winow of her dower, (it being

agreed, as a fact, that the lands are insufficient in value to satisfy the judgments.)

Second, can the administrator of the deceased husband set up these judgments in his answer in bar of her claims.

The title of doweress being a derivative of the husband, and attaching instantly upon a beneficial seizin in him, it would follow that her inchoate right is subject to all the infirmities, servitudes, and burdens incident to his title before marriage, or which were contemporaneous with his seizin, or an incumbrance upon it, at the time of its acquisition after marriage. If there were a lien by contract or by operation of law, as a judgment lien, already upon the land, at the time her right had its inception, her claim would be subject to the claim, and might be altogether defeated by it. For illustration, if an attachment was put upon the property before marriage, and pending the proceedings, and before judgment, the debtor married, a sale under the judgment would cut off the dower. Brown v. Williams, 31 Me. 406; Whitehead v. Cummins, 2 Car. (Ind.) Rep. 63; Sanford v. McLain, 3 Paige, 117; Robins v. Robins, 8 Black. Ind. Rep. 174. These cases were adjudged, under statutes, substantially like the common law.

What is the exact import and effect of a judgment lien? It was said by Marshall, C. J., in Rankin v. Scott, 11 Wheat. 179, to be as binding as a mortgage, and has the same capacity to hold the land, so long as the statute preserves its force. It gives a prior right of satisfaction out of the subject it binds, unless displaced by some act of the party holding it. The resemblance to the mortgage consists in this, that it takes priority from its date, and is superior to junior incumbrances made or suffered. And in this other aspect, that it adheres to the subject until displaced, or abandoned by the creditor, and subsists in spite of, and independent of, the debtor. The lien is not a title, a *jus*

*in rem*, but a "privilege," which takes hold of the property. When vitalized and made active by a sale, the title conveyed relates back to the date of the judgment, and overrides any subsequent incumbrance or conveyance made by the debtor, or arising by operation of law. The lien itself does not interrupt the husband's seizen; its utmost effect is as an incumbrance or burden upon it.

The view has been urged by the counsel for the plaintiff in error, that inasmuch as a sale by the sheriff relates back to the judgment, his deed operates to confer title as of the date of the judgment. And therefore, although the sale may not be made until after his death, the sheriff's deed has the effect to direct the seizin, as of the day of the judgment. And therefore it could not, in such case, be predicated that the husband died seized, so as, under the statute, to entitle the widow to dower.

In Pickett v. Buckner & Newman, (MSS. opinion) we brought the dower statute of 1857 into comparison with the common law, so as to determine the extent of the change made by the legislature. We interpreted the statute, as conferring power on the husband, to bar the wife's dower, by an act done by him, (which the common law did not permit,) to wit, a conveyance for a valuable consideration. The inchoate right which arises upon marriage and seizin, may be barred or destroyed by this subsequent act, but it remains in the wife inchoate and dormant until cut off. The wife's right may be vacated or rendered unfruitful and worthless by some trust or burden upon the husband's title, coeval with his seizin, as a vendor's lien for the purchase money, or a mortgage back to him, to secure its payment, or by some servitude, trust or burden, placed upon the title, before the inception of the wife's right by marriage, as a mortgage or judgment lien. Such incumbrances may sweep away the

husband's title altogether, and carry with them the wife's right. Such would be the effect at the common law.

The statute provides for but one case, where the voluntary act of the husband, during coverture, shall deprive the wife of dower. That is a *bona fide* conveyance for value. If, therefore, a judgment lien is not a conveyance, or the equivalent of it, the case is not within the statute. In Conrad v. Atlantic Ins. Co., 1 Pet. 433, the supreme court give a most definite and accurate description of such a lien. " It does not *per se* constitute a property or right in the land itself. It confers a right to levy on the same, to the exclusion of other adverse interests, subsequent to the judgment ; when the levy is actually made, (and a sale,) the title relates back to the time of the judgment, so as to cut out intermediate incumbrances." The entire doctrine of the title relating back, is to insure to the creditor the priority and preference of his lien—it is "to cut out intermediate incumbrances." It operates as against subsequent purchasers or lien creditors. It takes from the debtor the power to assign or burden the subject of the lien to the injury of the creditor. It disables and ties up the hands of the debtor, until the creditor chooses to enforce his right by a levy and sale. Until the sale, the debtor continues the owner, seized of the premises, and may stand upon his title in a court of law, as though no such burden were upon his land and his title. It would seem therefore, that if the husband died before a sale, he died seized of his lands. And that a purchaser under the judgment would get the full benefit of his lien, if the title was made to refer back to the time of the judgment, so as to overcome any assignment, or judgment, or right acquired from the debtor, subsequent to its rendition.

The claim to dower existed before the recovery of the judgment. It did not spring out of contract, or

agreement, it is institutional in character. It was in possibility, if it became complete and vested by survivorship. In no proper legal sense could it be said that it was dependent to any degree upon things done or omitted to be done by the husband, or that it could be divested by relationship to the date of the judgment.

If a sale is made by the sheriff in the husband's lifetime, dower is defeated because thereby seizin is broken up, and it cannot be said that the husband "died seized or possessed," as required by the statute. So in another case would she be cut off, where before her right had its inception, the husband's title was encumbered; her claim being an emanation from his title, partakes of its burdens, and would be subject to be defeated by the enforcement of the encumbrance. Another instance is where, in the act of acquiring a title and seizin, a trust arises as the vendor's lien. Her dower right would be inferior to the vendor's lien. But if at the time of the marriage, or at the time of the acquisition of lands during coverture, the husband's title was free of incumbrances, the wife's inchoate claim continues, subject only to be distroyed by a conveyance for a valuable consideration. If that has not been made, the statute leaves her interests unabted to be disposed of as at common law.

But whether these views be sound or not, is the administrator competent to set up the judgments recovered against the husband in bar of the dower?

It is not denied that Wm. R. Luckett, husband of the petitioner, Viola Luckett, died seized and possessed of the lands discribed in the petition, and in which his widow, the said Viola, sought an allotment of dower. But the plea is interposed in bar of her claim, in the answer of the administrator, that the judgments were recovered against the husband in his lifetime, and that proceedings of *scire facias* against his heirs have been instituted, looking to a sale of these lands.

It is urged in argument for the appellee, that if there be merit in this plea, the administrator can not make that sort of defence.

It has been put at rest, by a series of decisions, that the suit for the allotment of dower, is for many purposes *ex parte,* the probate court being an incompetent tribunal to canvass and adjudicate upon conflicting titles to land. In James et ux. v. Rowan et ux. 6 S. & M., the court say: They have repeatedly held, that the probate court is wholly unfit to decide upon the title to land, where there is a conflict of claims. Pickens v. Wilson, 13 S. & M. 691. The decree can only be obligatory upon the parties to the suit. These, under the statute, are the administrators and heirs or devizees. Art. 173, Code, 1857, p. 469. It is incumbent on the widow in establishing her right, to show a seizin of the husband at his death, or not alienation for value by him during coverture, or non-relinquishment by herself. These facts constitute her right as against the legal representatives, and the heir or devizees. But they conclude nobody else. They in nowise affect a claim or title, outstanding in any other persons. As against such claim or title she must establish her right in another forum. Burk v. Tappan and wife, 5 S. & M. 128; 13 ib. 691.

The judgment lien of the two creditors upon the land admitted to equal the fee value, is pleaded in bar by the administrator. Whatever may be the nature of the lien; as an incumbrance paramount to the claim of dower, it is evident that the administrator cannot rely upon it to defeat this suit. It is an outstanding claim in favor of strangers to the record, adversary to the title of the widow and the heirs, and if available, would defeat the heirs of their inheritance. But the creditors are not parties to this suit, and are not pressing their lien to defeat the owner. Any decision made upon their rights would estop them in another suit, and

would be an attempt to bind them, when not parties, to the record.

The widow is entitled to an assignment of dower. Her husband died seized of the lands. It is not shown that he has conveyed them in good faith and for a valuable consideration.

In this suit, the widow and the administrator, and heirs or devizee, nothing more is, or can be put in issue, than the marriage, the seizin of the husband, and non-alienation by the husband for value. Whilst the decision of the court is obligatory on the immediate parties, it concludes nobody else. Nor can an adversary title be brought into litigation.

*The decree is affirmed.*