LYMAN C. DAYTON *vs.* ELWOOD S. CORSER *et al.*

Argued Nov. 9, 1892.   Decided Nov. 29, 1892.

**Widow's Right in Deceased Husband's Land Sold on Execution.**

The inchoate contingent interest of a husband or wife in real estate owned by the other, fixed by the terms of Laws 1889, ch. 46, subch. 3, § 64, and commonly called the "dower right," is not divested by a transfer of title from the owner of the property to a purchaser at an execution sale founded upon a judgment against such owner.

**Minor Objections Considered.**

Certain assignments of error considered and disposed of.

Appeal by plaintiff, Lyman C. Dayton, from a judgment of the District Court of Ramsey county, *Kerr*, J., entered April 8, 1892.

Appeal also by the defendants Elwood S. Corser and Lester B. Elwood from the same judgment.

On September 20, 1890, Elwood S. Corser and Lester B. Elwood obtained judgment by confession in the District Court of Ramsey county against May I. Dayton, for $42,134.45 upon her promissory notes to them, which judgment was duly docketed. A writ of exe-

cution was issued on this judgment December 11, 1890, and delivered to the sheriff for service. Under it he, on January 26, 1891, sold a large amount of real estate situate in the City of St. Paul. Corser and Elwood bid in the property at the sale and the writ was returned satisfied. No redemption was made from this sale. She was the wife of Lyman C. Dayton, the plaintiff in this action. She died testate June 8, 1891, being at the time a resident of Aberdeen, in Brown county, South Dakota, and her will was admitted to probate there and also in Ramsey county, Minnesota.

The real estate so sold on execution belonged, in 1865, to Lyman Dayton, plaintiff's father. He devised it to his widow, Maria B. Dayton. She conveyed it at the request of the plaintiff Lyman C. Dayton, to his wife, May I. Dayton. Plaintiff and his wife afterwards disagreed and separated. He claimed that she took and held the title to this property in trust for him, and that she gave the notes and confessed the judgment to defraud him and prevent his obtaining the property.

This action was commenced September 19, 1891, after the death of May I. Dayton and before the time of redemption from the sale on execution had expired. The prayer of the complaint was that the judgment be vacated and the sale set aside and for such further relief in the premises as should seem to the court equitable. The defendants by their answer alleged that they loaned and advanced to May I. Dayton the full amount of the notes on which the judgment was confessed, and they asked that the action be dismissed on the merits. After the time for redemption from the execution sale had expired they obtained leave and filed an amended and supplemental answer stating that fact, and that no redemption had been made, and prayed judgment that they were owners in fee of the real estate sold, and that plaintiff had no estate, title or interest therein. To this the plaintiff replied, setting forth in detail the facts of his claim, that his wife held the property in trust for him, and that defendants had notice of his rights when they obtained judgment and when they bid in the property.

On February 20, 1892, the parties stipulated that the action should be placed on the calendar and tried not earlier than March 20, 1892.

It was tried before the court on March 22, 1892. When the cause was opened plaintiff asked leave to demur to the answer on the ground that it did not state facts sufficient to constitute a defense or counterclaim. The court refused the request, stating that plaintiff could object to the evidence and that the rulings then made would be as available as a ruling on a demurrer. On the trial plaintiff offered to prove by oral testimony that when his mother, Maria B. Dayton, conveyed the property to his wife, May I. Dayton, she agreed to hold the title in trust for the plaintiff, her husband. This was objected to and excluded, and plaintiff excepted to the ruling. In this connection plaintiff testified that the agreement was reduced to writing, but no writing to that effect was offered in evidence.

The trial court found that May I. Dayton was indebted to Corser and Elwood the full amount of the notes held by them, and that their judgment thereon against her was valid; that no trust was established; that neither by her will nor by the sale on execution was plaintiff's right in her lands as her survivor cut off; that he owned one undivided third of the property and Corser and Elwood the other two-thirds. Judgment was entered accordingly and both parties appeal. The defendants assign as error the ruling that Lyman C. Dayton inherited from his wife one undivided third of the property. The plaintiff assigned as error the ruling that his claim of a trust was not proved and other rulings against him on the trial.

*E. F. Lane,* for plaintiff.

Trusts arising or resulting by implication of law are excepted from the operation of the statute. 1878 G. S. ch. 43, § 6. The evidence offered and rejected tended to prove this case within that exception; to prove a trust arising *ex maleficio,* through the false and fraudulent representations of the trustee relied upon by the intended beneficiary and the grantor. A constructive trust arises on the facts which the court below refused to hear evidence of. The court would permit no inquiry into the circumstances creating the trust, although they would have shown a trust arising by implication of law of which the defendants had notice. The trust arose from the circumstances of the case, from the relation of the parties to each other, and from

the actual fraud alleged and sought to be shown. The actual fraud consisted of false statements, promises and agreements made with intent to deceive and obtain from plaintiff's mother the title to this property. Courts will not permit the statute of uses and trusts or of frauds to be invoked in order to perfect and legalize a fraud. *Randall* v. *Constans*, 33 Minn. 329; *Madigan* v. *Mead*, 31 Minn. 94; *King* v. *Remington*, 36 Minn. 15; *Kraemer* v. *Deustermann*, 37 Minn. 469; Pom. Eq. J. §§ 859, 1053, 1055, 1058; 1 Story, Eq. J. §§ 187, 307, 322; *Stark* v. *Starrs*, 6 Wall. 402; *Meader* v. *Norton*, 11 Wall. 442; *Jones* v. *Van Doren*, 130 U. S. 684.

The statutory right which has been substituted for dower and for the right by the curtesy, is subject to the same principles and the same policy which was applied to those estates. Unless this be true, various statutory provisions such as divorce, 1878 G. S. ch. 62, §§ 23, 24, partition of real property, 1878 G. S. ch. 74, §§ 8, 9, 23, 25, 26, 27, 28, 29, 30 and 38, and many others would be inoperative.

One of these equities or contingencies to which the estate of a married man or woman is subject is this statutory right contingent upon survivorship. It is not the qualification of one statute by another, but the qualification of the estate of the judgment debtor, if he or she happen to be married. The statutory creation of a contingent interest or estate in his or her land in favor of the spouse, to the extent of one-third in fee and which becomes absolute in case of survivorship, affects the ownership of the debtor to the extent of such interest. The authorities are unanimous that such an interest as this, whether it is called dower, curtesy, distributive share, statutory interest or by any other convenient term, has never been, unless made so by statute, subject to sale on execution under a judgment to which the party entitled to it was not a party. 1 Scribner, Dower, 603; Freeman, Judgm. § 361a, and cases cited; Black, Judgm. § 454; *Greiner* v. *Klein*, 28 Mich. 12; *Gove* v. *Cather*, 23 Ill. 634; *Wright* v. *Tichenor*, 104 Ind. 185; *Woodworth* v. *Paige*, 5 Ohio St. 70; *Rupe* v. *Hadley*, 113 Ind. 416; *Taylor* v. *Fowler*, 18 Ohio, 567; *Ketchum* v. *Shaw*, 28 Ohio St. 503; *Sutherland* v. *Sutherland*, 69 Ill. 481; *Nicoll* v. *Ogden*, 29 Ill. 386; *Peirce* v. *O'Brien*, 29 Fed. Rep. 402.

This estate of the spouse is subject only to debts of the deceased,

those proved against his estate after his death and which are not paid from his personal estate, and only in cases where he died seized of the land. *Goodwin* v. *Kumm*, 43 Minn. 403.

*Hahn & Hawley*, for defendants.

By the law of 1875 dower and curtesy were entirely abolished. With their abolition passed away the essential incidents of those estates. The decisions relating to those interests are no longer applicable to the new estate which has replaced dower and curtesy, an estate both larger in extent and different in nature from the old. Special caution must be exercised in attempting to apply any of the decisions as to dower or curtesy to the circumstances herein involved for the reason that almost all those decisions were rendered under the common law or under statutes providing for dower or custesy and are therefore inapplicable. There are two provisions of our statutes to be considered in determining the question presented, viz. the statute relating to judgments and execution sales contained in 1878 G. S. ch. 66, §§ 277, 322, and the provisions of the Probate Code relating to the title of real property by descent. Laws 1889, ch. 46, § 64.

The statute makes the judgment from the time of its docketing a lien on all the real property of the debtor. This lien is the measure as well as the inception of the purchaser's title. By the subsequent levy the lien becomes specific, and by the sale and the expiration of the period of redemption, it becomes perfect and absolute in the purchaser. As is the judgment lien, so will the purchaser's estate be. One is but the ripening and fruition of the other. If the law makes the judgment a lien upon the whole estate unqualified, the estate of the purchaser growing out of that lien should itself be considered of the nature which the statute in plain terms gives the lien, viz. a fee simple absolute title.

If the trial court's construction is correct the creditor who neglects to promptly prosecute his claim, and who, upon the death of the debtor, files it in the Probate Court, obtains an undoubted lien upon the whole estate, and through the instrumentality of the Probate Court this creditor is permitted to have the whole estate sold to satisfy his claim. But from him who with vigor and diligence presses his claim,

and seeks to realize thereon during the lifetime of the debtor, is withheld a one-third interest. We think there is no good reason in the nature of things why this should be so. It is the policy of the law rather to favor those who act with diligence. If the law relating to judgments and execution sales had stood alone, if there had been no law of descent adopted after the abolition of dower and curtesy, the whole estate free from the husband's contingent interest would have vested in the purchaser at the execution sale. What is there in the statute relating to the descent of real property that qualifies the absolute estate which a purchaser would otherwise be entitled to? Such qualification, if any, must be express and unmistakable to thus materially change the pre-existing law relating to execution sales. A proper view of Laws 1889, ch. 46, § 64, is that the surviving husband or wife is an inheritor, a statutory heir at law of the deceased whose interest with that of the other heirs is subject to the payment of the debts of the deceased and to judgments obtained against him. The interest of the surviving husband or wife differs from that of the other heirs in that such survivor cannot be deprived of the interest which the law gives him or her by any testamentary or other disposition. It is the plain intent of the statute that the survivor shall have this interest free from any voluntary act of the deceased, or any attempt on his part to dispose of it, and that the whole estate of the debtor, living or dead, should be alike subject to the payment of his just debts. The survivor's interest is not expressly made free from a judgment and execution sale. Not being in terms so made, such interest is subject to a sale made prior to the death of the owner. For the effect of the law of execution sales remains unmodified.

For many years the business of the community has been conducted in reliance upon the view that an execution sale passed the whole title, and pursuant to it numberless execution sales have been made. This view is supported by general assent and by almost universal opinion, and this unanimous assent amounts almost to the force of a rule of property. Any other view is contrary to the intent and purpose of the law, and would work a hardship upon both creditor and debtor, without any compensating advantages.

The demurrer sought to be interposed was obviously sham and

frivolous, and would have been stricken out on motion. It was in the discretion of the court under the circumstances to allow or disallow the interposition of the demurrer. The questions raised by the demurrer could as well be raised by objections to evidence upon the trial as by demurrer. As the continuance asked for: the stipulation of February 20th provided, that the issue might be made up, not later than March 16th, and that the case should be tried not earlier than March 20th.

No testimony was given or offered that May I. Dayton ever made any false representations for the purpose of having the title to the property placed in her name, or that either plaintiff or his mother had the title placed in her name in reliance on anything she said. Plaintiff himself testified that the title was put in May I. Dayton's name, because she was his wife, and because he had some obligations hanging over him, and some indebtedness against him, which would attach if he took the property in his own name. It also appears that the agreement between Dayton and his wife was in writing, which was not produced.

COLLINS, J. These were cross appeals from the same judgment. The facts were that, under and by virtue of an execution duly issued upon a judgment obtained by these defendants against one May I. Dayton, certain real property was levied upon and sold in January, 1891. These defendants became the purchasers at such execution sale, and there was no redemption. At the time of the rendition of the judgment the debtor was the wife of this plaintiff, and so remained until her death in June, 1891.

In the case at bar, which was brought to have set aside and vacated both the judgment and the sale for reasons which need not be stated, and also to have determined the rights of the parties in the real property so sold, the trial court refused to interfere with either the judgment or the sale, but did adjudge that the property passed to the defendants at the sale, subject to the inchoate and contingent right of the debtor's husband, the plaintiff, under the provisions of the Probate Code, and that upon her death he became seised in fee of an undivided one third of the same. It is this feature of the

judgment which has been assailed by defendants' assignments of error, while the contention of plaintiff in his appeal is that the court erred in various rulings made upon the trial, and in its determination that the defendants became the owners of an undivided two thirds of the property on the expiration of the period of redemption, or acquired any interest whatever. Naturally the defendants' appeal should be first disposed of, and the inquiry is whether the inchoate and contingent interest of a husband or wife in the real property of the other, as fixed by Laws 1889, ch. 46, subch. 3, § 64, is swept away and destroyed by a sale on execution, issued upon a judgment rendered during coverture against the husband or wife alone. The statute, which was but a re-enactment of 1878 G. S. ch. 46, § 3, provides: "Sec. 64. Such surviving husband or wife shall also be entitled to and shall hold in fee simple, or by such inferior tenure as the deceased was at any time during coverture seised or possessed thereof, one equal undivided one third ($\frac{1}{3}$) of all other lands of which the deceased was at any time during coverture seised or possessed, free from any testamentary or other disposition thereof to which such survivor shall not have assented in writing, but subject, in its just proportion with the other real estate, to the payment of such debts of the deceased as are not paid from the personal estate." The remainder of the section need not be quoted, as it has no bearing on the case.

When speaking of this language *In re Rausch,* 35 Minn. 291, (28 N. W. Rep. 920,) it was said that the provisions of the statute for the widow in the real estate of her deceased husband were rather in the nature of an enlargement than an abolishment of dower, and that this inchoate right "is of the same general nature as inchoate right of dower at common law." Although having reference to the rights of a surviving wife, these views are equally as pertinent and applicable to a case like this, where the statutory rights of a surviving husband are being considered; hence his rights are analogous to, and of the same general nature as, inchoate right of dower at common law. It hardly seems necessary to cite authorities to the proposition that at common law a wife could not be deprived of her dower rights in the real estate of her husband through a sale upon

execution under a judgment obtained against him subsequently to the marriage, but they may be found collected in 5 Amer. & Eng. Enc. Law, 920. And from an examination of the statute it would be impossible to conclude that a radical change in this matter had been wrought by it. There is nothing to indicate an intent to reduce or diminish the inchoate rights of a survivor; but, upon the other hand, the rule of the common law as to dower rights has been emphasized by this legislation; for, in addition to providing that such survivor shall hold in fee simple, or by such inferior tenure as the deceased had or held, an equal undivided one third of all lands of which the deceased was at any time during coverture seised or possessed, it was expressly declared that such holding should be free from any testamentary *or other disposition* to which the survivor had not assented in writing, subject, however, in its just proportion with other real estate, to the payment of such debts of the deceased as cannot be paid out of the personal estate. The plain meaning of this statute is that neither husband nor wife can be divested of the statutory right or interest in the real property of the other without having consented in writing. Every disposition of such real estate is covered by the language, and it is evident that, even if the words "or other disposition" were required to render the prohibition sufficiently certain, all doubt has been removed by their use. This language is broad and explicit enough to cover and include any transfer of title or disposition of the estate by execution sale. Husband and wife are given absolute protection as to the acts of either in respect to this statutory right or interest, and the statute must not be so construed as to place it in the power of a simple judgment creditor to defeat its purpose. If this were permitted, the husband or wife could, through connivance with a spurious creditor, easily circumvent the statute, and by means of an execution sale wipe out a right or interest which has been granted with great care and certainty. Again, such a construction would authorize the sale of an interest in real property which the debtor was unable to turn out in satisfaction of the debt or to dispose of in any manner. No statute should be interpreted so as to permit that to be done by indirection which cannot be accomplished by di-

rect means. Nor do the statutory provisions in regard to judgments and execution sales have any bearing upon those found in the Probate Code in reference to the title to real property by descent. By 1878 G. S. ch. 66, § 277, a duly-docketed judgment is declared to be a lien on the real property of the debtor for a certain period of time; and by section 322 the sheriff's certificate on execution sale, if properly proved or acknowledged and recorded, operates, upon the expiration of the period of redemption, as a conveyance of the judgment debtor's right, title, and interest in the estate, and nothing more. There is nothing in either of these sections indicating that the sale is not made subject to the inchoate contingent interest of the husband or wife. Under statutes similar to our own it has been held repeatedly that the inchoate right to dower attaches at the moment the husband's interest in the realty becomes fixed, during coverture, so that his creditors cannot by any proceeding against him impair or destroy the right. *Tate* v. *Jay*, 31 Ark. 576; *Nance* v. *Hooper*, 11 Ala. 552; *McMahon* v. *Russell*, 17 Fla. 698; *Wright* v. *Tichenor*, 104 Ind. 185, (3 N. E. Rep. 853;) *Sisk* v. *Smith*, 6 Ill. 503; *Sutherland* v. *Sutherland*, 69 Ill. 481; *Grady* v. *McCorkle*, 57 Mo. 172; *Gould* v. *Luckett*, 47 Miss. 96. A later decision—*Stewart* v. *Ross*, 50 Miss. 776—that a sale of a wife's land under execution defeats the husband's right of curtesy is based upon the statute in regard to this right.

As section 64, *supra*, provides that the statutory interest in question shall be "subject, in its just proportion with the other real estate, to the payment of such debts of the deceased as are not paid from the personal estate," it has been urged as a strong reason for adopting the views of defendants' counsel that the creditor who neglects to prosecute his claim, and upon the decease of the debtor files the same in the probate court, has a lien upon the entire estate, and may have it sold to satisfy his claim, free from the statutory right or interest, thus having an advantage over the diligent creditor who procures a judgment and makes sale upon execution during the lifetime of the debtor; but this line of argument has no real merit. If title to real property has been divested during lifetime by sale on execution, it is evident that a general creditor has no enforceable claim

upon that part of the same appropriated by statute to the surviving husband or wife, for it was held in *Goodwin* v. *Kumm*, 43 Minn. 403, (45 N. W. Rep. 853,) that only the interest of the wife in the lands owned by her husband at his decease—and consequently a part of his estate—could be rendered subject to his debts. The statute may be inconsistent in some respects, and present practical difficulties, but the lien or claim of the general creditor upon the statutory right or interest of the survivor is not without limit or qualification; and whatever this lien or claim may be, and to what extent it may be satisfied out of the statutory right or interest, is to be first determined in the probate court, in case the personal estate be insufficient to satisfy the debts of the deceased. This disposes of defendants' appeal, and we proceed to a brief consideration of such assignments of error made by plaintiff's counsel as need to be mentioned.

The issue of law which would have been raised if counsel had been allowed to interpose a demurrer to the amended answer was precisely the issue determined upon the trial in plaintiff's favor, and which we have just held to have been correctly decided. There are several reasons why the court was justified in its ruling, but it is enough for us to say that the plaintiff was not prejudiced by it.

The ruling on plaintiff's application for a continuance, based solely on the ground that the issue was not made until after the first day of the term, was correct. The pleadings were filed and served in strict accordance with a stipulation in which it was agreed that the case should be tried at the March term of the court, but not earlier than the 20th day of the month.

The contention that testimony should have been received as to an oral agreement between plaintiff and his wife that she should receive and hold the title to the property herein involved in trust for him has no merit. Conceding, even, that such testimony would have been admissible under any circumstances, it appeared from the testimony of the plaintiff himself, in immediate connection with the rulings by which this oral testimony was excluded, that the trust agreement had been reduced to writing, and counsel reserved the right to offer the instrument in evidence later on. It was not produced, nor

was attempt made to put it in evidence, until after the case was closed. A motion to reopen for the purpose of putting the document in evidence was then denied upon the ground that the case was closed, and no exception was taken to the ruling.

As to both parties the judgment is affirmed.

(Opinion published 53 N. W. Rep. 717.)