FRANK A. LUSE, Executor, v. JAMES C. REED and Others.[1]

November 26, 1895.

Nos. 9474—(123).

| 63 | 5 |
| 71 | 244 |
| 63 | 5 |
| 72 | 62 |
| 63 | 5 |
| 81 | 332 |

**Amendment of Complaint.**

    *Held*, the court below did not abuse its discretion in refusing plaintiff leave to amend his complaint on the trial.

**Finding Sustained.**

    A certain finding *held* supported by the evidence.

**Conveyance to Wife—Written Declaration of Trust.**

    A husband procured the title to real estate to be taken in his wife's name. A subsequent declaration of trust made and signed by her recited that the·

[1] Reported in 65 N. W. 91.

consideration for the conveyances was paid by her husband, that the land was conveyed to her for his use and benefit, and that she held it in trust for him. *Held* void under G. S. 1894, § 5534.

### Same—Verbal Declaration.

A verbal declaration of trust made by the wife to her husband at the time of the above conveyances also *held* void as within the statute of frauds and the statute of uses and trusts.

### Trust ex Maleficio—Finding Sustained.

*Held*, the finding of the court that there was not a trust ex maleficio is also supported by the evidence.

### Claims of Creditors of Deceased—Jurisdiction.

*Held*, this is not a proper action in which to determine whether or not the surviving husband's statutory interest in his deceased wife's real estate is subject to the claims of her creditors, but the same must be determined in the probate court, which has exclusive jurisdiction for that purpose.

Appeal by plaintiff from an order of the district court for Ramsey county, Egan, J., denying a motion for a new trial. Modified.

*Warren H. Mead* and *J. L. Macdonald*, for appellant.

*Hahn & Hawley, George P. Flannery*, and *Kitchel, Cohen & Shaw*, for respondents.

CANTY, J. Maria B. Dayton (or, since her remarriage, Maria B. Nell) is the mother of Lyman C. Dayton. She was formerly the owner of all the real estate here in controversy. May I. Dayton was the wife of Lyman C. Dayton from some time prior to 1868 until the time of her death, on June 8, 1891. From time to time, between 1868 and 1880, Lyman C. Dayton procured his mother, by various deeds, to convey portions of said real estate to his wife, and procured his mother's attorney in fact, Gen. R. W. Johnson, to make in her name other deeds of other portions of said real estate to his said wife. Lyman C. Dayton himself received these deeds, and put most of them on record. In this way the title to all of said real estate became vested in his wife. This action was brought by Lyman C. Dayton to have it declared by the court that May I. Dayton held all of said real estate in trust for him. Since his death, which occurred after the trial, the action has been continued by his executor. James C. Reed, the son and devisee of May I. Dayton, was appointed her executor, and he is made defendant. The other defendants claim title to the greater portion of this real

estate by reason of an execution sale on a judgment against May I. Dayton in her lifetime. The result of former litigation concerning this execution sale appears in Dayton v. Corser, 51 Minn. 406, 53 N. W. 717. The case was tried before the court without a jury, and judgment ordered for defendants. From an order denying his motion for a new trial, plaintiff appeals.

1. The original complaint alleges that in 1868, and ever since until the time of her death, May I. Dayton was the wife of plaintiff Lyman C. Dayton. After the commencement of the trial, plaintiff moved to amend his complaint by alleging that she never was his wife, but that prior to her marriage with him, to wit, in 1835, she married one Willoughby H. Reed, and continued to be his wife until he died, in 1890; that plaintiff always supposed she was his wife; and that she fraudulently procured plaintiff to take all of said conveyances to her, instead of to plaintiff himself, by fraudulently holding herself out to him as his lawful wife. The amendment was intended to raise in plaintiff's favor a trust ex maleficio in her. The court denied the motion, and this is assigned as error. It is well-settled law that such a motion to amend a pleading is addressed to the discretion of the court, and we cannot see that in this case the court below abused its discretion.

2. The plaintiff offered in evidence two unrecorded deeds purporting to be made by May I. Dayton and Lyman C. Dayton to one Stevens, one dated September 22, 1880, and the other January 5, 1887. These were followed by showing a subsequent unrecorded conveyance from Stevens to Lyman C. Dayton. These conveyances purported to transfer the title to all of said real estate from May I. Dayton to Lyman C. Dayton. The trial court found in effect that the first two deeds are forgeries, and, so far as they purport to be the deeds of May I. Dayton, we are of the opinion that the finding is sustained by the evidence. We will not discuss this evidence in detail, but will say that not only did the developments on the trial seem to warrant the court's finding, but the fact that for many years, both before and since his wife's death, Lyman C. Dayton has sought through the courts to recover this property, but has never before claimed to have any such conveyances of it, is also a circumstance tending to support that finding.

3. Lyman C. Dayton also offered in evidence a written instrument

dated August 15, 1885, purporting to be a written declaration of trust signed by May I. Dayton, in which all of said real estate is described, and in which it is recited: "That the conveyances of said real property have been made to me at the instance of my said husband, and no consideration was paid therefor by me in any instance, nor was there at any time any delivery of the deed or deeds therefor made to me, but to my said husband. That all of said conveyances were of real property originally belonging to the estate of Lyman Dayton, deceased, and were made by his widow, Mrs. Maria B. Dayton, and after her marriage to one M. Nell, as Maria B. Nell, with her said husband, or by Richard W. Johnson, their attorney in fact, to her son, the said Lyman C. Dayton, and for his exclusive use and benefit, under agreements for the conveyance of such property of the estate of his father, said Lyman Dayton, deceased, or for consideration of love and affection of the mother for her son, or for other considerations or transactions between the parties." Said written instrument further provides: "I, May I. Dayton, wife of Lyman C. Dayton, * * * do hereby certify and acknowledge that all of the following described real property, situated in the state of Minnesota, is held by me in trust for said Lyman C. Dayton, and the same, nor any part thereof, is to be conveyed or alienated by me in any manner whatsoever, except to my said husband, without his consent, and he joining with me in the said conveyance or alienation."

As we understand the findings of the trial court, he found this instrument also to be a forgery; but whether or not the finding is sustained by the evidence we will not consider, as we are of the opinion that in any event the instrument is void under the statute. G. S. 1894, § 5534, provides: "No contract between a husband and wife, the one with the other, relative to the real estate of either or any interest therein, shall be valid, nor shall any power of attorney or other authority from the one to the other to convey real estate or any interest therein be of any force." If by the conveyances from Mrs. Nell to May I. Dayton the title to the property became absolutely vested in the latter, so that her husband had no valid right or claim to it, except such inchoate right as he had by reason of being her husband, then under this statute there was no written instrument which she could make which would give him any greater right. If she could not by any such written contract directly vest in him any such right, she

could not indirectly vest it in him by admitting that she had prior thereto made an oral contract by which she agreed to vest it in him. If a written contract which purports in itself to speak the original words of the parties cannot be enforced, then a written contract, covering the same ground, which merely purports to reduce a prior verbal contract to writing, cannot be enforced. This disposes of the written declaration of trust.

4. There is no question better settled than that a mere verbal declaration of trust, where there is no fraud or bad faith except that which arises from merely refusing to carry out the promise, is void as within the statute of frauds (G. S. 1894, § 4213) and the statute of uses and trusts (§ 4280). Mercantile Nat. Bank v. Parsons, 54 Minn. 56, 55 N. W. 825; Connelly v. Sheridan, 41 Minn. 18, 42 N. W. 595. See, also, Wolford v. Farnham, 44 Minn. 159, 46 N. W. 295; Randall v. Constans, 33 Minn. 329, 23 N. W. 530.

5. The next question is, was there a trust ex maleficio by reason of any fraud or artifice practiced by May I. Dayton which induced the conveyances of the property to her?

Lyman C. Dayton was the only child of Mrs. Nell. The property was originally a part of his father's estate, and it sufficiently appears that the conveyances by her to his wife were intended largely for his benefit. The testimony offered on behalf of plaintiff shows that May I. Dayton had little or nothing to do with procuring those deeds. But Mrs. Nell testified that before any of the deeds were made to May I. Dayton, the witness was told by her that she had no relatives. Said the witness: "Whenever I talked with her, she always told me that she had no relatives, that her mother died in a lunatic asylum, and that her people were all dead, and she had nobody but Mr. Dayton. Time and again she told me that." "Q. What else did she say? A. Well, that she had no other relative; Mr. Dayton was all the world, all she had, all the relative or friend she had, and if she died her property went to Mr. Dayton." "Q. What representations at the time those deeds were made, if any, did May I. Dayton make as to her having any children? A. She said she had no children,—never had." This testimony is repeated and reiterated time and again in different forms, is corroborated to some extent by the testimony of Lyman C. Dayton, and is not directly contradicted by any evidence in the case.

We are of the opinion that the trial court would have been jus-
tified in finding a trust ex maleficio on this evidence. Such evidence
might bring the case within the class of cases in which the court de-
clares a trust ex maleficio by reason of the artifices of the grantee
in procuring the property to be conveyed to him. See 2 Pomeroy,
Eq. Jur. § 1053. But we are also of the opinion that the evidence
was not so conclusive in favor of plaintiff that the trial court was
bound to find for him. In the first place, May I. Dayton was dead at
the time the evidence was given of her alleged statements. This de-
tracts from the conclusiveness of the evidence that such statements
were ever in fact made. In the next place, even if it should be con-
clusively held that these statements were in fact made, it is not con-
clusive from the evidence that they induced or influenced the mak-
ing of the deeds to her. The evidence of both Mrs. Nell and Lyman
C. Dayton shows that one of the motives for making the deeds to
May I. Dayton instead of to Lyman C. Dayton was to avoid the pay-
ment of a number of judgments against him. The evidence also tends
to prove that the deeds obtained directly from Mrs. Nell were obtained
by Lyman C. Dayton himself after much quarreling with his mother,
and after making threats to do violence to her or some one else, and
the deeds obtained from her attorney in fact, Johnson, were so ob-
tained by Lyman C. Dayton himself without the knowledge or con-
sent of his mother. The evidence also tends to show that both Ly-
man C. Dayton and his mother must have known that May I. Day-
ton was sailing under false colors. He claims nothing but a com-
mon-law marriage to her, and just when he commenced to acknowl-
edge her as his wife is, from the evidence, exceedingly vague and in-
definite. She came here with him from New York in May, 1865, a
short time before his father's death. Mrs. Nell testified that she
knew her then as May I. Etting, and some time afterwards made the
first deed to her by that name, and delivered the deed to Lyman C.
Dayton. We must infer from the evidence of Mrs. Nell that she
knew that Lyman C. and May I. were then living and cohabiting to-
gether as man and wife, but that she did not go by his name. Sub-
sequently May I., by the name of May I. Etting, deeded back to Mrs.
Nell the property so conveyed to her by that deed, and Mrs. Nell
again conveyed it to May I. by the name of May I. Dayton. So far
as shown by the evidence, the mother does not appear to have ob-

jected to the peculiar relations existing up to this time between this woman and her son, and we cannot hold that the evidence conclusively proves that Mrs. Nell did not then know that this woman was the adventuress which she now claims that she was. The trial court found "that neither said grantors [Mrs. Nell and her husband] nor said Lyman C. Dayton were induced to make said deeds, or any of them, to said May I. Dayton, or to cause the title to said lands, or any thereof, to be placed in her name, by any statements, promises, or agreements of said May I. Dayton." Under the circumstances we cannot hold that this finding is contrary to the evidence. This renders it unnecessary for us to consider the effect of the judgment in the case of Dayton v. Corser, supra.

This disposes of the case, except as to one question. The trial court found as a conclusion of law that as the surviving husband of May I. Dayton, deceased, Lyman C. Dayton is the owner of an undivided one-third of all of said real estate, "subject to the payment of the debts of said deceased and the administration of said estate of May I. Dayton, and that said plaintiff Lyman C. Dayton has no other title to or right or interest in said real estate, or any part or portion thereof." To what extent, if any, his statutory share of his deceased wife's property is subject to her debts, we will not consider. This action is not a proper one in which to determine that question, but it should be left open for determination in the probate court, which has exclusive original jurisdiction for that purpose. We are of the opinion that the portion of the fourth conclusion of law above quoted should be modified so as to read as follows: "Subject to the rights of the creditors of said deceased and those holding claims against her estate, all of such rights to be determined by proper proceedings for that purpose."

It is ordered that the conclusions of law be so modified, and that in all other respects the order appealed from be affirmed.