FLORENCE LOVERIDGE v. R. M. COLES.

April 26, 1898.

Nos. 10,949—(59).

**Bond for Deed — Vendor without Marketable Title — Assignment of Certificate of Location—Vendor's Heirs not Bound by Vendor's Covenant.**

Plaintiff's intestate owned one-third of certain land, and her children two-thirds thereof, which they inherited from their father. She gave to the defendant a bond for a deed, wherein she covenanted, for herself and her heirs, to convey the land to him, and died without performing her covenant. *Held*, that the children, her sole heirs, are not bound by her covenant, so far as it purports to affect the interest in the land which they had when the covenant was made, and they are not bound to convey such interest to the defendant.

**Same—Executory Contract of Sale—Notes for Instalments of Price —Defense—Dependent and Independent Covenants.**

Where a vendee, in an executory contract for the sale and purchase of land, executes his notes for instalments of the purchase price, and takes a bond from the vendor conditioned to convey the land to him when the whole price is paid, his promises, as to all of the instalments except the last, are independent; and in an action prosecuted, before the last instalment matures, to recover on one or more of the notes, it is not a legal defense to such action that the vendor has not then a good title to the land.

**Same—Rescission by Purchaser—Surrender of Benefits Received.**

If the vendee in such a contract may rescind, before the last instalment becomes due, for the reason that he was induced, by the misrepresentation of the vendor as to his title, to make the contract (a question not decided), he must surrender his bond, and the possession of the land taken by virtue of the covenants in the bond, or offer so to do.

**Same—Evidence Not Sufficient to Warrant Relief.**

*Held*, that the defendant in this case did not establish facts entitling him either to a rescission of the contract or to any other equitable relief.

Appeal by defendant from an order of the district court for Washington county, Williston, J., denying the motion of plaintiff, as administratrix of the estate of Nancy J. Loveridge, deceased, for a new trial. Affirmed.

*F. V. Comfort,* for appellant.

The assignment of the certificate of location by Plummer was a valid transfer of the title to the lands to H. H. Loveridge. Camp v. Smith, 2 Minn. 131 (155); Woodbury v. Dorman, 15 Minn. 272 (338); Sharon v. Wooldrick, 18 Minn. 325 (354); Lewis v. Wetherell, 36 Minn. 386. The title to the lands having vested in H. H. Loveridge by this assignment can be removed from him only by a valid deed executed by him or by operation of law. The only pretended transfer shown to have been made by him is the unrecorded quitclaim deed made in 1886 to his wife, Nancy J. Loveridge. This deed is void under the Minnesota statute. G. S. 1894, § 5534; Luse v. Reed, 63 Minn. 5. The quitclaim deed covering these lands executed by Samuel C. Plummer to Nancy J. Loveridge in September, 1892, conveyed nothing; for Plummer had no interest in the lands to convey.

The defendant was entitled to rely upon the representations of the plaintiff in regard to the title to the lands. Grosh v. Ivanhoe, 95 Va. 161; Carter v. Cole (Tex. Civ. App.) 42 S. W. 369. A fraudulent purpose will be imputed to one who states of his own knowledge that a certain fact exists and induces another to act upon such statement, as in the case at bar. That the representations made were false in fact is established by the evidence in the case; and if false in fact, they were fraudulent as to defendant, and he, having relied upon them, has suffered thereby. Bullitt v. Farrar, 42 Minn. 8; Stone v. Denny, 4 Metc. (Mass.) 151; Merriam v. Pine, 23 Minn. 314; 2 Warvelle, Vend. 844; Moulton v. Chafee, 22 Fed. 26. There nowhere appears any evidence that plaintiff can or will perfect the title to these lands. The party in whom title is shown to be vested, having been dead more than ten years, and the obligor in the bond having never made a move to perfect the title in herself, to the time of her death, it is to be presumed there is no intention on plaintiff's part to give the defendant a title in fee simple. Townshend v. Goodfellow, 40 Minn. 312; Shriver v. Shriver, 86 N. Y. 575; Ladd v. Weiskopf, 62 Minn. 29.

Plaintiff cannot recover without producing upon the trial the notes taken for the purchase price. The defendant has the right to

insist upon the production and filing of the notes so that he may have a chance to know whether they are his obligations, and also to have them cancelled by the judgment when entered. Armstrong v. Lewis, 14 Minn. 308 (406); St. Paul v. Cannon, 46 Minn. 95.

*Clapp & Macartney,* for respondent.

It is probable that at the time the patent issued to Samuel C. Plummer, or within a reasonable time thereafter, H. H. Loveridge might have maintained an action against him to compel him to deed to Loveridge the title in fee to these lands, which unquestionably vested in Plummer when the patent issued to him. That was the only title or right to this land that he ever had. County v. Hunter, 42 Minn. 312; Green v. Liter, 8 Cranch, 229; Bagnell v. Broderick, 13 Pet. 436; Brown v. Clements, 3 How. 650; Minter v. Crommelin, 18 How. 87; Hooper v. Scheimer, 23 How. 235, 248; Fenn v. Holme, 21 How. 481. But this equitable right has long since been lost by laches if it has not passed to Nancy J. Loveridge by the deed to her from H. H. Loveridge.

If it be assumed for the purpose of this case that Nancy J. Loveridge did not have the title in fee to a two-thirds interest in this land, it is apparent from the record that this two-thirds interest is vested in her heirs, and they are bound, equally with her, by the covenants in the bond to convey a good title to plaintiff when he pays for the land; and there is nothing in the record from which the court can presume that they will not do so.

START, C. J.

This action was originally commenced by Nancy J. Loveridge to recover from the defendant the amount of two promissory notes dated October 7, 1895, for $400 each, made by the defendant to her.

The answer admitted the execution of the notes, and alleged that at the time of making them, and as a part of the same transaction, and as a consideration therefor, the payee of the notes executed to the defendant her bond for a deed, whereby she agreed to sell to him the land therein described, and covenanted for herself, her heirs and personal representatives, upon payment of the two notes and one other for the sum of $400, due October 7, 1897, to execute to him "a warranty deed in fee simple, free from all incumbrances,"

of the land therein described, which is situated in the county of Washington, in this state; that, for the purpose of inducing the defendant to enter into such transaction, she fraudulently represented to him that she was the owner of the land, and could and would convey to him, upon the payment of the purchase price thereof, an absolute title; that in fact she was not then, and never has been since, the owner of the land; and that she is a nonresident of this state, and insolvent. The answer prayed for a cancellation of the notes and general relief. The reply admitted the making of the bond, and that it and the notes were executed as one transaction, and put in issue the other allegations of the answer.

The plaintiff died pending the action, and her administratrix was substituted as plaintiff. The trial court made its findings of fact, and, as a conclusion of law, directed judgment for the plaintiff for the full amount claimed. The defendant appealed from an order denying the motion for a new trial.

The principal question on this appeal is whether the trial court's conclusion of law was justified by the facts found, which are, in substance, the following: Samuel C. Plummer, on June 2, 1856, entered the land in question by locating a land warrant thereon, and received from the proper local land officer the usual certificate, certifying that he had so entered it. Afterwards, on April 15, 1857, Plummer, by a writing by him signed, sealed, and indorsed on the back of such certificate, assumed to assign the same, and the land therein described, to H. H. Loveridge, his heirs and assigns. The assignment was in these words:

"For value received, I, Samuel C. Plummer, of the city of Rock Island, state of Illinois, to whom the within certificate of location was issued, do hereby sell and assign unto H. H. Loveridge, and to his heirs and assigns forever, the said certificate of location, and the warrant and the land therein described, and authorize him to receive the patent therefor. Witness my hand and seal this 15th day of April, 1857. Samuel C. Plummer. [Seal.]"

The certificate and assignment thereon was recorded in the office of the register of deeds of the proper county on April 27, 1883. The United States issued a patent for the land, August 18, 1858, to Plummer. H. H. Loveridge, on July 10, 1886, made his quitclaim

deed directly to his wife, Nancy J. Loveridge, whereby he assumed to convey to her, among other lands, the land in question. Loveridge died in 1887, leaving his widow, Nancy J. Loveridge, and his children, Florence and William P. Loveridge, as his sole heirs at law. Each of the children is now living, and is more than 21 years of age. Plummer and wife, September 2, 1892, executed a quitclaim deed of the land to Nancy J. Loveridge. The deed was duly recorded.

On October 7, 1895, Nancy J. Loveridge sold the land to the defendant for $1,200, to be paid by his three promissory notes, for $400, due in four months, one year, and two years, respectively, and she executed to him her bond for a deed, as alleged in the answer. It was agreed in the bond that the defendant was to have at once possession of the land. Nancy J. Loveridge died intestate, leaving, as her sole heirs at law, the two children of herself and husband, Florence and William P. Loveridge. The plaintiff, as administratrix of Nancy J. Loveridge, is now in possession of all three of the notes, no part of which has been paid, but only two of them were due at the time of the trial.

The trial court also found that the other allegations of the answer were not proven. This, in effect, is a finding that no representations were made and relied on as alleged in the answer, and that Nancy J. Loveridge did not die insolvent. The defendant makes the claim that neither of these findings is sustained by the evidence. The finding as to insolvency is sustained by the evidence, but the evidence is such as to require a finding that the vendor did, by her agent, represent that she was the absolute owner of the land, and that the defendant relied upon the representation, and, induced thereby, entered into the contract for the purchase of the land, but it is not such as to justify a finding that there was in fact any intentional false and fraudulent representations as to the title. The defendant's contention, that such a misrepresentation as to the title of the land, although innocently made and under the belief of its truth, having been relied upon by him, is, in legal effect, the same as if it had been an intentional misrepresentation, may be conceded. But such concession can only be material on the question of the right of the defendant to rescind.

It is clear from the facts found that the obligor did not have a marketable title to the whole of the land at the time she made the bond and agreed to convey to the defendant. Plummer, upon his entry of the land and the delivery to him of the land officer's certificate, became the equitable owner thereof. County v. Hunter, 42 Minn. 312, 44 N. W. 201. Such equitable title passed, by his assignment of the certificate and sale of the land, to H. H. Loveridge, and, when Plummer acquired the legal title upon the patent being issued to him, he held the legal title in trust for the equitable owner of the land, H. H. Loveridge, who attempted to convey his title to his wife, Nancy J., by a deed executed to her directly. This deed was void (G. S. 1894, § 5534; Luse v. Reed, 63 Minn. 5, 65 N. W. 91), and, on Loveridge's death, his widow, Nancy J., became the equitable owner of one-third of the land and his children of two-thirds thereof. After Mrs. Loveridge acquired the legal title, by deed from Plummer, she owned one-third of the land, and held the legal title as to the other two-thirds in trust for the children. Upon her death the whole legal and equitable title vested in the children.

This summary of the title is made upon the assumption that H. H. Loveridge made no testamentary disposition of the land, and that there are no debts of either parent chargeable against the land, there being no evidence to the contrary.

The plaintiff claims that the facts found fully justify the conclusion of law by the trial court for two reasons: (a) The heirs of the obligor are bound to convey to the defendant, upon his performance on his part of the conditions of the bond, the undivided two-thirds of the land which they inherited from their father, because they are also the heirs of their mother, the obligor in the bond, and equally bound with her to convey the land by the covenants in the bond which purport to bind her and her heirs. (b) The facts found do not constitute a defense to this action, if it be conceded that the heirs are not so bound.

1. The first proposition is untenable. It is entirely competent for the owner of land to create any charges on his land, or make any contracts in reference to it he sees fit, and thereby bind the land in the hands of his heirs, but the liability of heirs for the debts or covenants of their ancestors in no event extends beyond the

property inherited by them or its value. G. S. 1894, c. 77. Therefore the children of the vendor in this case are bound, by her covenant, to convey the land to the extent which they inherited it from her, but as to the undivided two-thirds which they inherited from their father they are not bound by their mother's covenant to convey it to the defendant.

2. Whether or not the second proposition is correct presents a more serious question, and will be first considered from the standpoint of the strict legal rights of the parties. It is elementary that, where the covenants or promises in an executory contract to convey land are mutual and dependent, the party seeking to enforce the performance by the other must first perform or tender performance on his part before he can maintain an action on the promise of the other party. Thus, where, in such a contract, the whole purchase price is to be paid at one time, on a day named, and the land conveyed upon such payment being made, the promises are dependent, and the payment and conveyance are to be simultaneous acts. The vendor, in such a case, must, if he would maintain an action to recover the purchase price, be then both able and ready to convey a marketable title.

But such is not the rule where the covenants and promises are not mutual and dependent, but independent. We are then to inquire as to the character of the promises in the contract in question. Are they dependent or independent? Clearly, the promise to pay the first two instalments is independent, and the promise to pay the third instalment a dependent one. The promises are that the vendor will convey the land,

"Upon being paid the full sum of twelve hundred dollars, according to the conditions of three certain promissory notes bearing even date herewith, for the sum of four hundred dollars each, * * * due, respectively, in four months, one year and two years from date."

The defendant executed the several notes as a part of the same transaction. The promise of the defendant to pay the first two instalments, as evidenced by his notes, is independent of the vendor's promise to convey. It was expressly agreed that the first two notes were to be paid before the deed was to be made. His security

for the payments which he promised to make before the vendor could be called upon to perform her promise to convey was her bond, conditioned for a conveyance when the last instalment was paid. It may or may not have been improvident for the defendant to rely only upon the solvency of the vendor as security for his payments, but such was his contract, and the vendor was not bound to be either able or willing to convey a good title at the maturity of the first two notes. It was only at the maturity of the third note that she was thus bound.

This case falls within the rule that where a vendee, in an executory contract for the sale and purchase of land, executes his notes for instalments of the purchase price, and takes bond from the vendor conditioned to convey the land to him when the last instalment is paid, the promises of the vendee as to all of the instalments except the last are independent, and in an action prosecuted by the vendor before the last instalment becomes due, to recover on one or more of the notes then due, it is not a legal defense to such action that the vendor has not then a good title to the whole or any part of the land. 2 Warvelle, Vend. 923; Robb v. Montgomery, 20 Johns. 15; Champion v. White, 5 Cow. 509; Coleman v. Rowe, 5 How. (Miss.) 460; McMath v. Johnson, 41 Miss. 439; Runkle v. Johnson, 30 Ill. 328; s. c. 83 Am. Dec. 191, notes.

Such are the strictly legal rights of the parties hereto, but the further question remains to be considered whether, upon the facts disclosed by the record, equity will afford the defendant any relief in this action. The defendant claims that his defense is an equitable one, "for the cancellation of a contract induced by false and fraudulent representations." If by this he means that the undisputed evidence and the facts found show that he had the right to have the contract rescinded, there are respectable authorities to sustain this position. See Coburn v. Haley, 57 Me. 346; Bailey v. Jordan, 32 Ala. 50; Harvey v. Morris, 63 Mo. 475; Rimer v. Dugan, 39 Miss. 477; Davis v. Heard, 44 Miss. 50.

Conceding, without so deciding, that the defendant might have rescinded this contract, and secured a cancellation of his notes, it is clear that neither the allegations of his answer nor the facts found entitle him to such relief. The burden was upon him to

show every fact necessary to establish his right to have his notes cancelled. His title bond expressly provides that he should have immediate possession of the land. There is neither allegation nor evidence in the record that he is not in possession of the land in accordance with the terms of the bond. Nor is there any claim made that he has ever been disturbed in such possession, or that any person is claiming the land from him; yet he has not surrendered, or offered so to do, either the possession of the land or the title bond. This case, then, is within the general rule that, if the right to rescind exists, it can only be exercised by making a complete restoration of what the party received by virtue of the contract, leaving the parties as though the contract had never been made.

It may and must be conceded that in cases of executory contracts for the sale of the land, where the purchase price is payable in instalments, before the vendor is bound to convey, and an action is brought to enforce payment of one or more of them, and it is shown that the vendor has not then a marketable title and is insolvent, or that there is just and reasonable ground for believing that, if the vendee is required then to pay the instalments sued for, he will lose both his money and the land, which facts were unknown to him when he made the contract, equity, on such terms as may be just, will enjoin the prosecution of the action or the collection of the judgment until the time comes for the vendor to perform or the title is quieted, or grant such other relief as may be just. See 2 Warvelle, Vend. 937, § 14 ; Heavner v. Morgan, 30 W. Va. 335, 4 S. E. 406.

The defendant failed to establish such equities in this case. The trial court found that the vendor was not insolvent. There is no evidence that she died leaving any debts, nor do the facts found justify the conclusion that there is a reasonable and just apprehension that, if required to pay the instalments sued for, the defendant will lose both his money and his land. On the contrary, the reasonable probability is that, if he pays the purchase price of the land, he will secure a good title thereto; for, if there are no debts against the vendor's estate, the purchase price will go to the two heirs who own the undivided two-thirds of the land in dispute, one

72 M.—5

of whom is the administratrix, to whom the money is to be paid. They will not be entitled to the purchase price unless the land is conveyed to the defendant, and the money if paid, and land not conveyed, will remain in the hands of the administratrix for him. In the meantime he is in possession of the land.

Again, the last instalment is now due, it having matured since the trial, and the defendant is in a position to tender performance on his part, and demand a performance of the vendor's covenant to give him a good title to the whole of the land. Of course, this is no reason why equitable relief should not be granted to him in this action, if the facts established on the trial entitle him to it; but it is a reason why the court should be fully satisfied, before granting such relief, that the facts found clearly and decisively demand it.

The last point made by the defendant is that the notes were not produced on the trial. The answer admitted the execution of the notes, and that they were in possession of the plaintiff. If the defendant desires to have them filed with the clerk before judgment is entered, he can apply to the district court for such an order. The failure to file them is no reason why a new trial should be granted.

Order affirmed.

CANTY, J. (dissenting).

I cannot concur in the foregoing opinion. I concede that if defendant entered into the contract to purchase the land, knowing that Nancy J. Loveridge had no title, he would not be entitled to any equitable relief in this action. In that case, he would have relied on her personal responsibility alone, and not on the security which he supposed he had obtained by his contract made with one who was supposed to have a good title, and his possession taken under that contract or the recording of the same. If he relied on her personal responsibility when he took the contract, law and equity would both require him, in the absence of fraud, to continue to rely on that responsibility until the time came for her to perform by delivering the deed. But the evidence will not warrant

a finding that he intended to make so foolish a bargain or that he knew that her title was defective.

I am also of the opinion that the vendee is not entitled to rescind until the vendor is given an opportunity to perform by obtaining a good title, and conveying the same when the last instalment of the purchase price falls due and all of that price is paid. This is according to the weight of authority and the better opinion. See Pomeroy, Spec. Perf. Cont. §§ 341, 342, and cases cited. The majority cite several authorities to the contrary, but, in my opinion, they should not be followed. But this does not imply that the vendee must rely solely on the personal covenants of the vendor, as that would leave the vendor at liberty to make a contract to sell when he knew he had no title or right, but was willing to take his chances on being able to acquire the property in the meantime. Then the vendor has no right to make a contract to sell, unless he in good faith believes that he has the title or some certain means of acquiring it, and this disposes of the theory that the vendee must rely solely on the personal covenants of the vendor.

The rule for granting relief between vendor and vendee should be very equitable and flexible. Where both parties supposed when the contract was made that the vendor had title, and it turns out that he had not, it is a case of mutual mistake, in which a court of equity should grant the proper relief. That relief may not be a rescission of the contract until such time as the vendor is required to deliver a good title. A court of equity will not, any more than a court of law, deprive him of the opportunity to procure title in the meantime. But, while the court is thus lenient with the vendor, it ought not to compel the vendee to incur an unjust and unreasonable risk. The vendee is not at fault, but the vendor is. Then why should the vendee be compelled to incur this risk? Under our practice, every court is a court of equity whenever equitable principles intervene.

In my opinion, the trial court should, as a condition precedent to the entry of judgment in favor of plaintiff, have required her to file a bond with sufficient sureties, conditioned for the return of the amount collected on the judgment in case she fails to make defendant a good title to the land at the time appointed by the con-

tract, or else the court should have stayed proceedings in this action until such time, on the filing by defendant of a bond with sufficient sureties, conditioned for the payment of the amount that may be adjudged against him in this action. The trial court refused to find that Nancy J. Loveridge was insolvent at the time of her death (she died during the pendency of the action). There are cases in which equitable relief similar to that here proposed has been granted, where it affirmatively appeared that the vendor was insolvent. See Hunter v. Bradford, 3 Fla. 269.

While there may be no precedent for granting such relief, where it does not appear that the vendor was insolvent, yet it seems to me that the principles involved are plain. All the authorities hold that no equitable relief should be granted to the defendant in such a case as this, but I submit that the cases which so hold are based on a wrong theory, to-wit, that, as to the instalments of the purchase price which the vendee agrees to pay in advance of receiving the deed, he receives no present consideration at the time he makes the payment of each instalment, but must trust wholly to the personal covenants of the vendor. This is not true. If the vendor has title, and the vendee is in possession or has recorded his contract, every time he pays such an instalment he increases his present equitable interest in the land to the amount of the payment, and the courts should not offer the vendor a premium on depriving the vendee of this right.

Clearly, the contract is ordinarily intended to give, on the part of the vendor, something more than his personal covenant to the vendee. There is no principle better established in equity than that which holds that the vendee is the equitable owner of the land.

"Equity says that from the contract, even while yet executory, the vendee acquires a 'real' right, a right of property in the land, which, though lacking a legal title and therefore equitable only, is none the less the real, beneficial ownership, subject, however, to a lien of the vendor as security for the purchase price as long as that remains unpaid." 1 Pomeroy, Eq. Jur. § 105.

If the vendee's contract was intended to give him this present real ownership, but fails to do so because the vendor had no title,

it is the duty of a court of equity to protect the vendee against substantial risk, whether the vendor is solvent or insolvent. And who can say that the risk in this case is not substantial?

The doctrine of the courts on this question might not, as a rule, have worked serious injustice a hundred years ago, in England, where there were no exemption laws, and the remedy of imprisonment for debt existed. Under such circumstances, few could afford to become insolvent or to retain what did not belong to them after a judgment was entered against them for the return of it. But in these modern times, in this country, where we have exemption laws, and parties can dispose of their property and become execution proof so easily, the risk is very great which a vendee must run if he must pay such instalments, and trust solely to the future personal responsibility of the vendor when the latter has no title.

Again, for the same reasons, the law is very crude and unjust which requires a vendee who has taken possession and made valuable improvements or paid a part of the purchase price to surrender possession before he can rescind the contract for fraud or failure of title. He should be allowed to hold the possession as security for the repayment of such part of the purchase price, and the payment to him of the value of his improvements, and he should also be awarded a lien for the same on such title or interest as the vendor may have in the land. In my opinion this case should be remanded to the court below, with directions either to stay proceedings on the filing of a bond by defendant, or to order that judgment be entered only on the filing of a bond by plaintiff, as above suggested.